HERBERT J. HERMAN, ET AL. *v.* MAYOR AND CITY
COUNCIL OF BALTIMORE, ET AL.

[No. 44, October Term, 1947.]

192

*Decided November 3, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Joseph O. Kaiser* and *Avrum K. Rifman,* with whom were *Kenny & Kaiser* on the brief, for Herman & Lessner.

*Wyatt & Jones* for Diskin.

*Allen A. Davis, Assistant City Solicitor,* and *Lester H. Crowther, Deputy City Solicitor,* with whom was *Simon E. Soboloff, City Solicitor,* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Herbert J. Herman and Charles H. Lessner, of Baltimore, trading as Ace Liquors, brought this suit against the Mayor and City Council of Baltimore, William F. Broening, City Collector, and James J. Lacy, State Comptroller, to obtain (1) a declaratory decree to declare void that part of an ordinance of the City of Baltimore which imposes a tax of 50 cents per gallon on certain alcoholic beverages in the hands of retail dealers on January 1, 1947, and (2) an injunction to restrain the enforcement of the ordinance.

The bill of complaint alleges that complainants conduct a store on the southeast corner of Baltimore and Eutaw Streets for the retail sale of alcoholic beverages, and that they paid a tax of $351.10 to the City of Baltimore and State of Maryland upon their stock in business, including alcoholic beverages, for the year 1946, and were liable for a similar tax of $342.72 for the year 1947. On December 23, 1946, the Mayor and City Council of Baltimore, pursuant to authority granted by the Legislature in 1945, enacted an ordinance imposing a tax of 50 cents per gallon on all distilled spirits and other alcoholic beverages, except beer and wine, sold or delivered by a manufacturer or wholesaler to any retail dealer in Baltimore City during the year 1947, and a like tax of 50 cents per gallon on such beverages in the hands of retailers on January 1, 1947. On December 31, 1946, City Collector Broening issued regulations requiring retail dealers subject to the tax to file an inventory of alcoholic beverages in their hands on January 1, 1947. Complainants had on hand alcoholic beverages ranging in value from $12.85 to $35.40 per gallon, upon which a tax of $1,087.01 was claimed to be due under the ordi-

nance. They were notified that, if they failed to pay the tax by January 15, they would be prohibited from dealing in alcoholic beverages. They alleged that the ordinance is invalid and refused to pay the tax, but they deposited with the clerk $1,087.01, subject to the order of the Court. William Diskin, trading as Ford's Liquors, intervened as a party complainant. Defendants demurred to the bill, and from a decree sustaining the demurrers and dismissing the bill, complainants appealed.

The Maryland Alcoholic Beverage Law, regulating the sale of alcoholic beverages in this State, declared: "No city or town shall be permitted to impose any additional license fees or taxes other than the usual property tax, upon alcoholic beverages, or upon the exercise of the privileges conferred by the licenses issued under the provisions of this Article." Laws of 1937, chs. 476, 493; Laws of 1939, ch. 642; Code, 1939, art. 2B, sec. 8. On October 29, 1945, when a grave situation existed in Baltimore on account of the urgent need for additional funds to meet the municipal budget requirements, and the authorization of the State was necessary to meet the needs, Governor O'Conor convened the Legislature in special session on November 5. He recommended in a letter to the Legislature that the City be granted "general taxing powers" to meet the emergency; and an Act was passed authorizing the Mayor and City Council to exercise "the power to tax to the same extent as the State has or could exercise said power within the limits of said City as part of its general taxing power." The Act expressly authorized the City to provide by ordinance for the imposition, assessment, levy and collection of any tax or taxes so authorized, the power so granted expiring on January 1, 1948. The Act was declared to be an emergency measure and took effect from the date of its passage. It was approved by the Governor on November 7. Laws of 1045, Sp. Sess., ch. 1. The City thereupon adopted the ordinance which is now before us.

Unquestionably the City had no power to impose excises on alcoholic beverages unless there was a repeal

of Section 8 of the Alcoholic Beverages Law. Appellants questioned whether the members of the Legislature actually intended to repeal Section 8 in any respect. While it is true that the Act of 1945 does not refer to Section 8 specifically, nevertheless it does declare that all laws or parts of laws inconsistent with the provisions of the Act are repealed to the extent of such inconsistency. Section 8 declared that the provisions of the Act with respect to Class F licenses "shall not be deemed as repealed by any local Act hereafter passed unless expressly referred to and expressly repealed in terms." But Class F licenses were issued only for the sale of alcoholic beverages on the railroads, whereas appellants have been selling under a Class A (Off Sale) license. In our opinion the Act of 1945 repealed Section 8 in so far as it had prohibited the City from taxing the holders of Class A licenses in Baltimore City. In 1947 the Legislature revised the Alcoholic Beverages Law by re-pealing and re-enacting Article 2B. Laws of 1947, ch. 501. We are not called upon in this case to decide what effect, if any, the Act of 1947 enacting Section 23 in place of Section 8 had upon the City's power to tax beverages sold or delivered by manufacturers and whole-salers in 1947. But certainly it did not wipe out the tax on beverages in the hands of retailers on January 1, 1947, since the Act did not take effect until April 16, 1947.

Appellants then suggested that, even if the Legislature had intended to allow Baltimore City to impose excises, the ordinance did not effectuate that intention. It is a general principle that an ordinance passed in pursuance of express legislative authority is a law within the meaning of the Constitution, and has the same effect as a local law duly enacted by the Legislature. *Gould v. City of Baltimore*, 120 Md. 534, 538, 87 A. 818. We are also guided by the rule of interpretation of statutes, laid down many years ago by the Legislature, that where the public general law and the public local law of any county, city, town or district are in conflict, the public local law

shall prevail. Code, art. 1, sec. 13. Hence, we think it is clear that the ordinance prevails over the general law. We are mindful of the provision of the Home Rule Amendment to the Maryland Constitution, ratified in November, 1915, that "in case of any conflict between said local law and any Public General Law now or hereafter enacted the Public General Law shall control." Md. Constitution, art. 11A, sec. 3. Section 2 of the Amendment provides that the express powers previously granted to the City of Baltimore, Code P. L. L., art. 4, sec. 6, shall not be enlarged or extended by its charter; but such powers may be extended, modified, amended or repealed by the Legislature. Under Section 3, the City, since the adoption of its charter in November, 1918, has had the power to enact local laws, including the power to repeal or amend local laws enacted by the Legislature, upon all matters covered by the express powers granted by the Legislature. *Church Home and Infirmary v. City of Baltimore,* 178 Md. 326, 330, 13 A. 2d 596. It is only in case of conflict between a public general law enacted by the Legislature and an ordinance enacted by the City without specific law enacted by the Legislature granting city power, that the rule of interpretation in the Home Rule Amendment applies. The rule does not abrogate the statutory rule of interpretation applicable to conflicts between public general laws and public local laws enacted by the Legislature.

We now come to the question whether the tax imposed by the ordinance is a property tax, or violates Article 15 or Article 23 of the Maryland Declaration of Rights or the Fourteenth Amendment to the Constitution of the United States. Appellants argued that, since they are required to pay a tax on their stock in business, including the alcoholic beverages, the new tax creates double taxation. The distinction between a property tax and an excise may become important under Article 15; Article 23 and the Fourteenth Amendment permit discrimination, not arbitrary, in subjects or rates of taxation, including property taxes. Alcoholic beverages have been subjects

of the earliest excise taxes and of a great variety of special taxes and regulations. The reasonableness of discrimination between such beverages or some of them and other property, at least in the absence of constitutional limitations similar to Article 15, is beyond question. The broad power of the State to impose excises was explained by Chief Justice Hughes in the following words: "The State is not limited to *ad valorem* taxation. It may impose different specific taxes upon different trades and professions and may vary the rates of excise upon various products. In levying such taxes, the State is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use, or value. To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure." *Ohio Oil Co. v. Conway,* 281 U. S. 146, 50 S. Ct. 310, 314, 74 L. Ed. 775.

A property tax is assessed on property by reason of ownership alone—or of the exercise of any one of substantially all the rights that constitute ownership. Excises have been defined as taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges. *Cooley, Constitutional Limitations,* 7th Ed., 680; 1 *Cooley, Law of Taxation,* 4th Ed., sec. 42; *Flint v. Stone Tracy Co.,* 220 U. S. 107, 31 S. Ct. 342, 349, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; *Blaustein v. Levin,* 176 Md. 423, 4 A. 2d 861. Unless a third class of taxes, neither property tax nor excise, is recognized (which except perhaps with respect to federal taxes could serve no useful purpose), it seems convenient to regard excises as including all internal taxes that are not property taxes, *e. g.,* most of the new taxes introduced during this century. So regarded, excises include income taxes (*State v. Philadelphia, W. & B. R. Co.,* 45 Md. 361, 379, 24 Am. Rep. 511; *Oursler v. Tawes,* 178 Md. 471, 481, 485, 486, 13 A. 2d 763; *Brushaber v. Union Pac.*

*R. Co.*, 240 U. S. 1, 17, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713) and new taxes on the exercise of incidents of ownership short of mere ownership itself. The nature of a tax must be determined by its operation, rather than by any particular descriptive language which may have been applied to it. *Educational Films Corporation of America v. Ward*, 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400, 71 A. L. R. 1226.

Among the earliest, and also among the latest, excise taxes have been various sales taxes. Of modern sales taxes, one of the oldest and most widespread is the gasoline tax. During the last 25 years or more, in an increasing number of states, the gasoline tax and other sales taxes have been complemented by a "compensating" use tax, usually including "storage" (*i. e.*, possession) for future use, to prevent evasion by extra-state purchases and discrimination in favor of such purchases as against local purchases. Such use taxes have frequently been attacked under the Commerce Clause, U. S. Const., art. 1. sec. 8, cl. 3, and under the Fourteenth Amendment; they have been sustained by the Supreme Court when in operation they do not amount to a tax on interstate commerce or a discrimination against such commerce, but only prevent discrimination against local sales. *Gregg Dyeing Co. v. Query*, 1932, 286 U. S. 472, 52 S. Ct. 631, 76 L. Ed. 1232, 84 A. L. R. 831 (unanimous opinion by Hughes, C. J., covering both the Commerce Clause and the Fourteenth Amendment). In the case cited the Supreme Court of South Carolina said, "The tax here imposed is an excise tax and not a property tax." 286 U. S. at page 477, 52 S. Ct. at page 633, 76 L. Ed. 1232, 84 A. L. R. 831. In *Bowman v. Continental Oil Co.*, 256 U. S. 642, 648, 649, 41 S. Ct. 606, 65 L. Ed. 1139, it was held that an excise tax on the sale or use of gasoline was not a property tax within an equality provision of the New Mexico constitution. A number of state court decisions to the same effect, with respect to gasoline or other use taxes, are collected in Notes in 129 *A. L. R.* 222, 230-232 and 153 *A. L. R.* 609, 615, 616. On the point that such taxes are not discriminatory against interstate commerce

or unjustly discriminatory under the Fourteenth Amendment, see also *Nashville, C. & St. L. Ry. v. Wallace,* 288 U. S. 249, 264-268, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191; *Edelman v. Boeing,* 289 U. S. 249, 53 S. Ct. 591, 77 L. Ed. 1155; *Monamotor Oil Co. v. Johnson,* 292 U. S. 86, 54 S. Ct. 575, 78 L. Ed. 1141; *Henneford v. Silas Mason Co.,* 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814.

*Patton v. Brady,* 184 U. S. 608, 623, 22 S. Ct. 493, 499, 46 L. Ed. 713, involved the validity of the Spanish War Revenue Act of 1898, which imposed (*a*) an increased tax of 12 cents per pound upon all manufactured tobacco sold for consumption or sale and (*b*) a tax (equal to one half the increase) upon tobacco already taxpaid and removed from factory and held and intended for sale by any person. It was held that the latter tax was valid and that "such an increase may be made at least while the property is held for sale and before it has passed into the hands of the consumer."

In the case at bar we think the challenged tax is an excise. It is applicable only to beverages in the hands of retailers on January 1, 1947, *i. e.,* then held for sale under a retail license. Appellants were not compelled to continue in business until January 1, 1947. Their license is not property and confers no property rights. Art. 2B, sec. 28, as in force on and before January 1, 1947. The tax on retailers, like the tax on manufacturers and wholesalers, is a tax on the privilege of continuing in business. It is quite evident that the purpose of the Mayor and City Council was to make the tax on the retailers complementary to that on the wholesalers, so that the tax would not be evaded by deliveries to retailers before January 1, 1947 and would not discriminate in favor of beverages delivered before January 1, 1947. Imposition of both an excise tax on an occupation and an *ad valorem* tax on property used in the business is not forbidden. *Ohio River & W. R. Co. v. Dittey,* 232 U. S. 576, 34 S. Ct. 372, 376, 58 L. Ed. 737. Appellants complained that no privileges are conferred upon them in return for the stamp tax, which is three times as much as the usual property tax. However, we must remember that the obligation of the

individual to the State is continuous, and proportioned to the extent of the public needs. Human wisdom cannot always foresee what may be the emergencies of the future, or determine in advance exactly what the government will require. Consequently the State must not be impotent to make a further call upon its citizens for contributions needed for unexpected exigencies. *Patton v. Brady, supra.* As we have remarked, this tax is an additional tax on the privilege of doing an alcoholic beverage business.

Appellants rely on *County Com'rs of Anne Arundel County v. English,* 182 Md. 514, 35 A. 2d 135, 150 A. L. R. 842, and *Dawson v. Kentucky Distilleries & Warehouse Co.,* 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638 (cited with approval in the *English* case) as supporting their contention that this tax is a property tax and is unconstitutional under Article 15. Those cases are distinguishable and we think the case at bar is well on the other side of the line. Neither the *English* case nor the *Dawson* case involved a use tax complementary to a sales tax. In the *English* case the tax was in name a flat license tax upon the use of a trailer for habitation, but being a tax on the essential use for which the trailer was constructed, was held to be a property tax and under Article 15 an unconstitutional addition to the ordinary property tax on trailers. *Supra,* 182 Md. 528, 530, 35 A. 2d 142, 143. Likewise in the *Dawson* case, *supra,* 255 U. S. at page 294, 41 S. Ct. at page 275, the tax upon withdrawal of whisky from bond in Kentucky or transfer in bond outside Kentucky was a tax on any one of the only uses of which the whisky was capable, including consumption, and was therefore held to be a property tax and to be invalid under a provision of the Kentucky constitution similar to Article 15.

As the ordinance does not violate Article 15 or Article 23 of the Maryland Declaration of Rights or the Fourteenth Amendment to the Federal Constitution, the decree dismissing the bill of complaint will be affirmed.

*Decree affirmed, with costs.*