HITCHINS *v.* MAYOR AND CITY COUNCIL OF CUMBERLAND ET AL.
(Two Appeals in Separate Records)

[Nos. 58-59, October Term, 1955 (Adv.).]

136

*Decided, per curiam, July 26, 1955.*

*Opinion filed November 4, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William C. Walsh,* with whom were *Miles, Walsh & Stockbridge* on the brief, for the appellant.

*Thomas B. Finan, City Solicitor of Cumberland,* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant, as a taxpayer, brought two suits in the Circuit Court for Allegany County, each of which sought a declaratory decree and an injunction, against the Mayor and City Council of Cumberland (referred to below as "Cumberland", the "City" or the "City of Cumberland") and the Mayor and City Clerk of Cumberland. In the first suit (No. 58) the principal question was this: Were Sections 215-222 of the Charter of Cumberland dealing with the methods of amending that Charter as enacted by Chapter 702 of the Acts of 1951, a Public Local Law, superseded by the provisions relating to the methods of amending municipal charters generally contained in Chapter 423 of the Acts of 1955, a Public General Law passed to implement the Municipal Home Rule Amendment (Article XI-E of the State Constitution) adopted in 1954? The second suit (No. 59) presented this further, but closely related, question: Could the specific provisions of the Charter relating to the authorization of water bonds be amended after the effective date of the 1955 Act in the manner authorized by that Act? The Circuit Court upheld both the applicability of the 1955 Act and the validity of the proceedings taken in pursuance thereof with respect to amending the Charter provisions relating to the authorization of water bonds; and the taxpayer appealed. This Court advanced both cases for argument and affirmed the decree in each case by a *per curiam* order.

There were several other questions raised, but they do not require decision. One was a claim by the City that Chapter 702 of the Acts of 1951 was unconstitutional. It was rejected by the Circuit Court and abandoned here. Two others would have been pertinent if the effect of the Home Rule Amendment and of Chapter 423 of the Acts of 1955 had not been to super-

sede Sections 215-222 of the Charter of Cumberland as enacted by Chapter 702 of the Acts of 1951. We shall now proceed to state our reasons for holding that these Sections have been superseded.

For brevity, we shall refer to the municipal corporations of the State to which Chapter 423 of the Acts of 1955 is applicable as "municipalities". All of them are within the scope of Article XI-E of the Constitution, and they include all incorporated cities, towns and villages in the State, except the City of Baltimore. The sections added to Article 23A of the Code (1951 Edition and 1954 Supplement), entitled "Corporations—Municipal", are codified in the 1955 Supplement under the sub-title, "Home Rule", as Sections 9-43, inclusive, and they will be referred to as so codified. The Charter of Cumberland as it existed prior to April 18, 1955, which was the effective date of Chapter 423 of the Acts of 1955, will be referred to as the "old Charter."

Sections 215-222 of the old Charter provided, in brief, that the Charter of Cumberland could be amended (except in certain respects not here involved) in this way: An amendment might be proposed by a majority of all of the members of the Mayor and City Council or by a petition signed by registered voters numbering not less than 10% of those who had voted for mayoralty candidates at the last election; and thereafter the amendment as proposed by either of these methods had to be submitted to a referendum vote of the voters of the City, and would become effective if, and only if, approved by a majority of the voters voting on the question.

The contrasting provisions of Article XI-E of the Constitution and of the implementing legislation passed pursuant thereto require a rather full statement. Article XI-E, the Municipal Home Rule Amendment, is generally in accord with the recommendations of the Commission on Governmental Organization of the State, which was appointed by Governor McKeldin and is usually known by the name of its Chairman, the Honorable Simon E. Soboloff, as the "Soboloff Commission." This Amendment

consists of six sections. Under Sections 1 and 2 the General Assembly is required to classify all municipal corporations of the State, except the City of Baltimore and the Counties, by grouping them into not more than four classes, based on population, and the Legislature is prohibited from passing "any law relating to the incorporation, organization, government, or affairs of * * * [such] municipal corporations * * * which will be special or local in its terms or in its effect". It is further provided that the General Assembly shall act in relation to such matters only by general laws applicable to all municipal corporations in any of the several classes to be established. Sections 3 and 4 read in full as follows:

"Sec. 3. Any such municipal corporation, now existing or hereafter created, shall have the power and authority, (a) to amend or repeal an existing charter or local laws relating to the incorporation, organization, government, or affairs of said municipal corporation heretofore enacted by the General Assembly of Maryland, and (b) to adopt a new charter, and to amend or repeal any charter adopted under the provisions of this article."

"Sec. 4. The adoption of a new charter, the amendment of any charter or local laws, or the repeal of any part of a charter or local laws shall be proposed either by a resolution of the legislative body of any such municipal corporation or by a petition containing the signatures of at least five per cent of the registered voters of a municipal corporation and filed with the legislative body of said municipal corporation. The General Assembly shall amplify the provisions of this section by general law in any manner not inconsistent with this article."

Section 5, which deals with limitations upon rates of municipal taxation of property, upon sources of municipal taxation and upon the amount of municipal debt and reserves powers to the General Assembly with regard

to such matters (notwithstanding other provisions of the Article), is not directly pertinent. It may be noted in passing that Acts of the General Assembly adopted pursuant to this Section are subject to local referenda, and that charter provisions falling within the field of this Section which may be adopted pursuant to Section 3, are subject to local laws which may be enacted by the General Assembly pursuant to Section 5 and approved by local municipal referendum votes.

Section 6 provides, *inter alia,* that "Any local law, or amendments thereto, relating to the incorporation, organization, government, or affairs of any municipal corporation and in effect at the time this article becomes effective, shall be subject to any applicable State law enacted after this article becomes effective. All laws enacted by the General Assembly and in effect at the time this article becomes effective, shall remain in effect until amended or repealed in accordance with the provisions of this Constitution."

Chapter 423 of the Acts of 1955 was enacted to implement the Municipal Home Rule Amendment. It added thirty-five new sections to Article 23A of the Code. We shall refer to those which have a direct bearing on these cases.

Section 11 prescribes that "Every municipality shall proceed as in this sub-heading provided in exercising and applying the powers for the amendment of municipal charters which are granted thereto by Article 11E of the Constitution of Maryland."

Sections 12, 13 and 14 contain provisions authorizing the adoption of charter amendments and permit them to be initiated by action of the legislative body of the municipality through a majority vote of all persons elected to such legislative body or by petition of at least 20% of the qualified voters of the municipality. There is a difference between Section 14 of Article 23A and the provisions of the old Charter of Cumberland in the number or percentage of votes required to initiate a petition for amendment.

The major difference between the amending procedure authorized by the old Charter of Cumberland and that set out in Sections 11-14 of Article 23A is with regard to proceedings after the proposed amendment has been initiated by action of the legislative body, and it is this difference which gives rise to this litigation. Under the old Charter a referendum vote was mandatory as a prerequisite to the proposed amendment becoming effective. Under the present Code provisions it may not be necessary to submit a proposed amendment to a referendum vote.

Under Section 13 of Article 23A a copy of the proposed amendment must be posted for at least forty days following its proposal by the legislative body at the town hall or at some other public place, and a fair summary of its provisions must be published in a newspaper of general circulation in the municipality at least four times at weekly intervals within forty days after its approval by the legislative body. An amendment so proposed and advertised will become effective on the fiftieth day after its being so ordained or passed, unless within forty days after the adoption of the resolution proposing the amendment not less than 20% of the qualified voters of the municipality file a petition for a referendum. If such a petition is filed, the amendment must be submitted to a referendum vote; in the absence of such a petition no referendum is necessary, and, as stated, the amendment becomes a part of the charter on the fiftieth day after its approval by the legislative body.

It is interesting to note that there may be no need for a referendum vote on an amendment initiated by petition. Under Section 14(b), if an amendment is initiated by petition under subsection (a) of Section 14, the legislative body may, if it approves of the amendment, in effect take it over and propose it by resolution of its own. In such a case the amendment goes forward as if the legislative body itself had initiated it under Section 13; and unless a referendum is demanded, it

becomes a part of the charter without any referendum vote.

We think it perfectly clear that in terms the Municipal Home Rule Amendment and the Code provisions added to Article 23A by Chapter 423 of the Acts of 1955 are applicable to the City of Cumberland.

The appellant suggests that the absence of any express repeal of prior inconsistent laws indicates that none was intended, and hence that Sections 215-222 of the old Charter remain in force.

We think, however, that this is clearly a case in which the provisions of Sections 11-18 of Article 23A of the Code, enacted to implement Article XI-E, and particularly to implement Section 4 thereof, occupy the whole field of amendments to charters of municipalities and that the provisions of Sections 215-222 of the old Charter are thereby superseded by what may be termed either a repeal by substitution or a repeal by implication. The provisions of the old Charter just referred to authorize amendments to the Charter of Cumberland and prescribe how they may be made. Article XI-E of the Constitution authorizes amendments of the charters of all municipal corporations (with certain exceptions not here material), and Sections 11-18 of the Code prescribe how such municipal corporations shall make amendments to their charters, and the methods prescribed differ from those of the old Charter of Cumberland. That the general provisions of the Code were meant to be all-inclusive is, we think, clear. This view is fortified by the provisions of Article XI-E which manifest strongly and explicitly an intention that the Legislature shall deal with the charters of municipalities in matters pertaining to their incorporation, organization, government or affairs on a general basis and shall not enact local legislation to amend the charters of individual municipalities. Correlatively, the solution of local problems is left to local action by the adoption or amendment of charters of municipalities to be effected in accordance with general laws. While we find no difficulty in reaching this construction of the

Constitutional and Code provisions and hence there is no need to resort to any extrinsic aids to construction, we note that these provisions are in harmony with the recommendations of the Sobeloff Commission which were before the General Assembly and which seem to have served as the basis for the Constitutional Amendment and the implementing legislation.

The appellant has urged that under Code (1951), Article 1, Section 13, which states that "where the public general law and the public local law of any county, city, town or district are in conflict, the public local law shall prevail", Sections 215-222 of the old Charter continue in force. That Section, however, is not, and has never been held to be, an absolute bar to the repeal of a local law by substitution or by implication as the result of the enactment of a Public General Law. The law is well established to the contrary.

In *Willing v. Bozman*, 52 Md. 44, a public local law of Wicomico County was held to have been repealed by a subsequent general law dealing with the same matter.

In *Alexander v. Baltimore*, 53 Md. 100, the subject was fully discussed. After pointing out that the enactment of what is now Section 13 (then Section 11) of Article 1 of the Code was called for by the difficulties which might flow from the simultaneous enactment of Codes of Public Local Laws and of Public General Laws with inconsistent provisions, the Court, in an opinion by Judge Irving said: "That rule was never intended, and has never been held by this court, to remove local laws from the effect and operation of the ordinary rules of construction derived from the common law, when applied to subsequent legislation. If the Legislature in the passage of later laws, by its language clearly indicates either expressly or by necessary implication, a purpose to substitute a new scheme of laws for the pre-existing law, general and local, or to repeal the local by the adoption of a new general law, clearly intended to operate equally throughout the State, the local law must yield to that intention thus ascertained."

*State v. Falkenham,* 73 Md. 463, 21 A. 370, is to the same effect. There a statewide law on the subject of cruelty to animals was held to have superseded an earlier local law dealing with the same subject.

In *Green v. State,* 170 Md. 134, 183 A. 526, a local law was held to have been repealed by a subsequent general law intended to deal with the whole subject. Judge Sloan quoted from *Garrett v. James,* 65 Md. 260, 3 A. 597, 599, the statement that: "The general rule in the construction of statutes * * * is that a later one of a general nature does not effect the repeal of a special one, unless direct reference is made to the latter with that intent, or in terms they are so irreconcilable that a repeal by implication is manifest." He then went on to say: "It has been frequently said in this court and elsewhere that repeals by implication are not favored and will not be so held, unless there is some express reference to the previous statute, or unless there is a manifest inconsistency in the two, or their provisions are so repugnant that they cannot stand together. [Citing cases.]" To this he added: "It is also a rule that where there is a legislative intent to pass a general law as a substitute for local laws, the later general law will operate to repeal the prior local laws." This, too, was followed by the citation of several cases.

In *Hill v. State,* 174 Md. 137, 197 A. 795, Judge Offutt cited with approval *Bishop* on *Statutory Crimes* and quoted from Section 112 b a statement that "where from anything cognizable by the judges they are satisfied that the general law was meant by the legislature to supersede the local or special, they will give it such effect." He then added: "Whether the general law operates concurrently with the local law, repeals, abrogates or suspends it, depends upon the legislative intent."

There are a number of cases in this State in which it has been held that a general law covering the whole subject superseded or repealed by implication, and without express words of repeal, either a special act or a general law on the same subject. Among them are: *State v.*

*Northern Central Ry. Co.,* 44 Md. 131 (special act) ; *Montel v. Consolidation Coal Co.,* 39 Md. 164 (general law) ; *Bay Bridge Ferry Corp. v. Queen Anne's County,* 160 Md. 398, 153 A. 441 (obsolete general law) ; *La Fontaine v. Wilson,* 185 Md. 673, 45 A. 2d 729 (general law). See also *Appeal Tax Court v. Western Md. R.R. Co.,* 50 Md. 274, and *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 106 A. 2d 103 (special act), where the rule was recognized but not found applicable.

When we look at Section 11 of Article 23A which states that "Every municipal corporation in this State shall proceed as in this sub-heading provided in exercising and applying the powers for the amendment of municipal charters which are granted thereto by Article 11-E of the Constitution of Maryland" and also look at the detailed and complete provisions of the succeeding sections as to how amendments are to be made, we have no doubt of the legislative intent to supersede such a prior local law as Sections 215-222 of the old Charter of Cumberland, which deals with the same subject matter.

At this point we may take note of the appellant's suggestion that there is some question about the meaning or application of the language in Section 6 of Article XI-E stating that "any local law * * * relating to the incorporation, organization, government or affairs of any municipal corporation and in effect at the time this Article becomes effective shall be subject to any applicable State law enacted after this article becomes effective." This question, he says, arises from the opinion in *Herman v. City of Baltimore,* 189 Md. 191, at 196, 55 A. 2d 491, at 494. There, after quoting the provision of Section 3 of Article XI-A (the "Home Rule" Amendment applicable to Baltimore City and to any County electing to adopt a Home Rule Charter) which states that "in case of any conflict between said local law and any Public General Law now or hereafter enacted the Public General Law shall control", the Court said: "It is only in case of conflict between a public general law enacted by the Legislature and an ordinance enacted by the City without

specific law enacted by the Legislature granting city power, that the rule of interpretation in the Home Rule Amendment applies. The rule does not abrogate the statutory rule of interpretation applicable to conflicts between public general laws and public local laws *enacted by the Legislature.*" (Emphasis supplied.) We are unable to see how any rule of supremacy as between an ordinance enacted under a "Home Rule" Charter and a Public General Law enacted by the Legislature has any bearing upon the question whether a Public Local law is or is not repealed by a subsequent Public General Law dealing with the same subject, both of which were enacted by the Legislature. The last sentence quoted above from the *Herman* case seems in full accord with this view. We may add that the most recent case dealing with this subject, *Heubeck v. City of Baltimore,* 205 Md. 203, 107 A. 2d 99, applied the rule of supremacy stated in Section 3 of Article XI-A and held invalid an ordinance of Baltimore City because of conflict with a Public General Law of the State.

The first suit challenged the validity of "Charter Amendment Resolution No. 1" which included an Ordinance (No. 1994), adopted on June 6, 1955, by the Mayor and City Council of Cumberland. This proposed to delete Sections 215-222 of the old Charter. The combination of a Resolution and an Ordinance was designed to obviate any question as to which was the proper method of procedure. As the Circuit Court held, the "Ordinance" may be regarded as surplusage, and its presence does not impair the validity of the Resolution.

It follows from what we have already said that after Sections 11-18 of Article 23A of the Code took effect on April 18, 1955, Sections 215-222 of the old Charter of Cumberland ceased to be of any force or effect. It was then more a matter of good housekeeping than of necessity to delete them from the Charter, but we think that the procedure followed by the Mayor and City Council of Cumberland in adopting Charter Amendment Resolution No. 1 proposing to delete these dead Sections was proper

and in accordance with the Code provisions just referred to.

We find no such sanctity in the amendment provisions of a charter as to place them beyond the possibility of amendment otherwise than as provided by their own terms. For example, if Article XI-E had never been adopted, no reason is apparent why the General Assembly could not have repealed or amended Sections 215-222 of the old Charter of Cumberland and have thus done away with its referendum requirements. Likewise, since the adoption of Article XI-E, we find no basis upon which to deny the power of the General Assembly to enact implementing legislation, in conformity with the new constitutional provisions, prescribing a new method of amendment. On the contrary, we think that Article XI-E fully warrants such legislation.

The second question—whether Resolution No. 2 proposing an amendment to Section 82(d) of the Charter to eliminate the requirement for a referendum vote on the issuance of water bonds—is for all practical purposes answered by the views which have already been expressed as to the law applicable to the amendment of the Charter of Cumberland. The procedure followed with respect to the amendment of Section 82(d) is in conformity with the provisions of Sections 11, 12 and 13 of Article 23A of the Code. These have superseded Sections 215-222 of the old Charter and the superseded Sections have been eliminated. Accordingly Resolution No. 2, which proposes an amendment of Section 82(d), has been proposed in a manner authorized by existing law; and in the absence of a petition for a referendum filed in accordance with Section 13 of Article 23A, there is no requirement under existing and applicable law that a referendum vote be held on this proposed amendment as a prerequisite to its becoming effective.

For the reasons above stated we affirmed the decrees of the Circuit Court for Allegany County.