RAFFERTY ET AL. *v.* COMPTROLLER OF THE TREASURY

[No. 208, September Term, 1961.]

(Three Appeals In One Record)

154

*Decided March 20, 1962.*

The cause was argued before Brune, C. J., and Henderson, Horney, and Marbury, JJ., and Menchine, Associate Judge, Third Judicial Circuit, specially assigned.

*Clyde Y. Morris* and *Robert L. Karwacki,* for appellants.

*William J. McCarthy, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for appellee.

Horney, J., delivered the opinion of the Court.

These appeals present a question as to whether the receipt by stockholders of payments made in liquidation of a domestic or foreign corporation are taxable as income under the provisions of the state income tax laws.[1]

The assessed taxpayers are all residents of Maryland. The dissolved corporation was the Monumental Radio Corporation. It had been incorporated under the laws of Maryland on July 12, 1926, and from that date until 1956, it had engaged in the business of operating a radio station in Baltimore.

When the plan of liquidation recommended by the board of directors and approved by the stockholders became effective, the corporation, as of June 15, 1956, had 38,667 shares of stock outstanding of the par value of $1 a share. As of the same date, the earned surplus was $503,120.05 accumulated from operations and $337,240.30 had been realized as a capital gain from the sale of assets. The corporation had no capital surplus or paid in surplus. Prior to the effective date of the liquidation plan, the sum of $812,007 had been deposited with a depository to provide for the initial payment of $21 a share to the stockholders in exchange for their certificates of stock.

---

1. The income tax laws are presently codified as Code (1957), Art. 81, §§ 279-323, and all code references, unless otherwise specified, are to Article 81 of the Code of 1957, but the assessments and imposition of tax on 1956 incomes were made under the provisions of the Code of 1951. However, although the sections were renumbered upon the adoption of the present code, the content of the sections was not changed.

Of the sum deposited, $38,667, representing the total par value of the outstanding stock, was a return of capital, and the balance of $773,340 was paid out of the earned surplus. The stockholders, on turning in their certificates, were issued, in lieu thereof, transferable receipts evidencing their right to future payments to be made out of the sum remaining after all liabilities of the corporation and the liquidating expenses had been paid. On or about October 10, 1957, a final sum of $61,867.20, or $1.60 per share, was deposited in the depository to be paid to the holders of the receipts. For several years prior to the adoption of the liquidation plan, the stock of the corporation had been actively traded in the over-the-counter market.

The appellant, John P. Rafferty, had purchased 150 shares of the stock for $29 per share, for a total of $4,350, and, since he received payments totaling only $3,390 under the plan of liquidation, his capital loss was $960. The appellant, Louise V. Lyons, had inherited 4,088 shares valued for estate tax purposes at $28 per share, for a total of $114,464, and, having received only $92,388.80 under the plan, her capital loss was $22,075.20. And the appellant, L. Waters Milbourne, owned 14,160 shares which he had acquired by purchase, inheritance and gift, at an average cost of $12.28 per share, for a total of $173,884.80, but, having received $320,016 under the plan, his capital gain was $146,131.20.

The assessments levied by the Comptroller of the Treasury against these appellants were made under the authority of § 288 (c) imposing a tax on taxable net income of individuals and corporations. In § 285, it is specified that *taxable net income* is the gross income of the taxpayer, less the deductions (allowed by § 281 or § 282 as limited by § 283) and the exemptions (allowed by § 286). In § 280, *gross income* is defined as "income from whatever source derived" and includes dividends as one of the enumerated sources, but subsection (a) of § 280 specifically provides that *gross income* shall not include "capital gains realized from the sale, exchange or other disposition of property held by a taxpayer." And, in § 279 (j), the meaning of *dividend* is said to be:

"[A]ny distribution made by a corporation (domestic or foreign) out of its net profits, whenever earned, to its stockholders or members, whether such distribution be made in cash or other property, except stock of the same class in the corporation. *Amounts paid in liquidation or dissolution of a corporation shall be treated as dividends to the extent that they represent earnings of the corporation.*" [Italicization added.]

The appellants advance three contentions as to why the judgments appealed from should be reversed. Two of them concern the nature of the liquidation transaction and are somewhat interrelated. The other concerns the constitutionality of the statute imposing the tax. They say: (i) that the disposition of their stock during 1956 (the year in which the dissolution of the corporation became effective) was a sale, exchange or other disposition within the terms of § 280 (a) or § 283 (a); (ii) that that part of the payments received in 1956 represented a return of their capital investment and was not therefore includable in gross income under § 280; and (iii) that the imposition of an income tax on the return of capital invested in the stock violates Articles 15 and 23 of the Maryland Declaration of Rights and the due process clause of the Fourteenth Amendment to the Constitution of the United States. But there is no contention here, and apparently there was none below, to the effect that only the operating profits, as distinguished from capital gains on the sales of assets, represented the "earnings of the corporation," [2] and we shall assume that it was either not raised or was abandoned.

### (i)

We think the claim of the appellants that the Comptroller, in reaching the result he did, ignored the statutory framework

---

2. See the several opinions of the Attorneys General of Maryland in 28 O. A. G. 254 (1943), 38 O. A. G. 308 (1953), and 41 O. A. G. 343 (1956) analyzing the nature of the "earnings" out of which distributions must be made in order to be taxable as a "dividend." See also Cromwell, *Taxing Liquidating Dividends,* 20 Md. L. Rev. 266 (1960).

of § 280 (a)-(q), wherein the exclusions from gross income are enumerated, lacks substantial merit. For to give effect to § 280 (a), excluding "capital gains realized from the sale, exchange or other disposition of property held by a taxpayer" from *gross income,* would completely nullify the terms of § 279 (j) definitely stating the taxability of liquidation distributions by providing that such payments shall be treated as dividends.

There is, of course, a rule of statutory construction to the effect that the general language of one part of a statute may be controlled by the more specific phraseology of another part, *Department of Tidewater Fisheries v. Sollers,* 201 Md. 603, 95 A. 2d 306 (1953), but there is also an elementary rule of construction requiring that a statute shall be so interpreted as to give meaning to each of its provisions so as not to render any of them nugatory. *Fisher v. Bethesda Corp.,* 221 Md. 271, 157 A. 2d 265 (1960); *Thomas v. Police Com'r,* 211 Md. 357, 127 A. 2d 625 (1956).

While we pause to note that a tax situation such as this might be given different treatment under the federal income tax law in that the transaction could be considered as a "sale or exchange," it is manifest that the Legislature has consistently expressed and adhered to the concept that distributions made in the course of corporate liquidations shall be "treated as dividends" to the extent specified in the statute. That this is so, is made evident by an examination of the legislative history of § 279 (j).

Originally enacted as § 215 (i) of Art. 81 by Ch. 11 of the Acts of 1937 (Sp. Sess.), the definitional explanation of a *dividend* was then so worded as to include a provision that "such portion of the assets of a corporation distributed at the time of dissolution as are in effect a distribution of earnings." But because there was confusion as to the exact meaning and effect of the quoted sentence, the section [3] was promptly amended by § 12 of Ch. 277 of the Acts of 1939 so as to re-

---

3. The italicized portion of § 279 (j) quoted in full on p. 3 was substituted by the amendment for the sentence deleted from the original statute.

move all doubt that distributions made in contemplation of dissolution included the earnings of all prior years as well as the earnings of the year in which the dissolution was consummated.

Twelve years later, in its report dated March 1951, the Maryland Tax Survey Commission of 1949 recommended that the last sentence of § 215 (j) be eliminated. The 1951 session of the Legislature acted promptly (through Senate Bill No. 398) and passed a proposed amendment that would have made the receipt of a liquidating dividend a nontaxable capital transaction instead of the taxable item of income it still is. But the Governor (Theodore R. McKeldin) vetoed the measure,[4] and the veto was not overridden. Nor has the Legislature, in the more than a decade that has since elapsed, repealed the provision requiring liquidation distributions to be taxed as income from dividends.

Inasmuch as *gross income* is defined broadly to include a dividend, and a *dividend* is said to mean any distribution made out of earnings and profits, we think it is clear that distributions made in the process of liquidation or dissolution of a corporation were intended to be included in the general definition of what is a dividend. In reaching this conclusion we have not overlooked the decision in *Lynch v. State Board,* 291 N. W. 161 (Iowa 1940) to the effect that a liquidating distribution of physical assets and cash was a capital transaction and not a dividend. In view of the similarity of the Iowa and Maryland definition, this case undoubtedly supports the appellants' contentions, but we are unable to agree with the construction adopted in the *Lynch* case. Our conclusion is fortified by the Legislative history of the Maryland statute.

---

4. The reasons for the veto are set forth in the veto message. See p. 2136 of the Laws of Maryland for 1951. Among other things, it was pointed out that the bill would require stockholders receiving a distribution of earnings as a dividend from a going corporation to continue paying a personal income tax thereon, but, on the other hand the bill would be particularly beneficial to the stockholders of collapsible corporations.

(ii)

Now with respect to the claim that the payments received by two of the appellants represented a return of the capital they had invested in the stock owned by them which was not lawfully includable in gross income, they insist that they received *no* gross income within the definitional meaning of that term. And the other appellant (who made a profit) maintains that the gross income he received ought to be limited to the profit he realized on the transaction, to be determined by deducting the cost of the stock from the sum received in exchange therefor. The gist of these contentions is that only such dividends as actually constituted income in the hands of the recipient was intended to be included in gross income. We do not agree.

Much of what we have said with respect to the first contention may be applicable to this second contention, but, in addition to that, it appears that the weight of authority is to the effect that in determining whether a liquidation distribution is a return of *capital* to the stockholder must be determined from the affairs of the corporation and not those of the individual stockholders.

In *Boston Safe Dep. & Tr. Co. v. Commissioner,* 159 N. E. 536 (Mass. 1928), the Court, in upholding the taxability of a liquidation distribution of capital in excess of the par value of the shares, said at p. 538:

> "There can be no doubt of the power of the Legislature * * * to define that accumulated profits, when declared in way of [a] dividend in liquidation, shall be income when received by the stockholder.
>
> In the light of [the statute] * * * plainly it is an immaterial circumstance whether the stockholder made an investment of his own capital in the hope of receiving a dividend of accumulated profits. The Legislature, acting within its power, has stamped such dividend of accumulated profits as income and taxable as such."

See also *Follett v. Commissioner,* 166 N. E. 575 (Mass. 1929); *Falk v. Wisconsin Tax Comm.,* 259 N. W. 624 (Wis. 1935);

*Reeves v. Turner,* 158 S. W. 2d 978 (Ky. 1942). And see Cromwell, *Liquidating Dividends Under the Maryland Income Tax,* 20 Md. L. Rev. 266, 271, where, after stating that *capital* means corporate capital, it is said that "[t]he price at which the shareholder purchased his stock is irrelevant as is the fact that this purchase price was partly attributable to earnings accumulated at that time."

(iii)

In this final contention, also based on the premise that the liquidation distribution received by each of them was a return of captial invested in the stock, the appellants further contend that the imposition of an income tax thereon violated Articles 15 and 23 of the Maryland Declaration of Rights and the due process clause of the Fourteenth Amendment of the Constitution of the United States, but this contention is likewise without merit.

Article 15 definitely establishes a requirement of uniformity with respect to the levy of property taxes, but it is now well settled that the state income tax is not a property tax and therefore not within the scope of Article 15. See, for instance, *Oursler v. Tawes,* 178 Md. 471, 13 A. 2d 763 (1940); *Herman v. Mayor & C. C. of Baltimore,* 189 Md. 191, 55 A. 2d 491 (1947). See also Cromwell, *op. cit.,* p. 272.

This Court has said in construing Article 23 that the Supreme Court cases construing the due process clause of the Fourteenth Amendment are "practically direct authorities." *Home Utilities Co. v. Revere,* 209 Md. 610, 122 A. 2d 109 (1956). We shall therefore consider such of the cases as appear to be directly in point with respect to this final claim that the income tax imposed by the Comptroller did not meet the reasonable classification test required by due process.

In *United States v. Phellis,* 257 U. S. 156 (1921), a tax situation comparable to that in this case was presented to the Supreme Court. In that case, a New Jersey corporation had undergone a reorganization pursuant to which most of its properties were transferred to a newly formed Delaware corporation, in return for which stock and securities of the new corporation were issued to the old corporation, and the stock

in turn was transferred to the stockholders of the New Jersey corporation which had continued in existence. As a consequence, the entire value of the stock so distributed was taxed to the New Jersey corporation shareholders as a dividend under the Federal Income Tax Act of 1913. In affirming the imposition of the tax, the Court in effect stated that the earnings and profits of a corporation retained that status upon distribution, and, as such, were subject to tax regardless of what the stockholder had invested in his shares. And in *Taft v. Bower*, 278 U. S. 470 (1929), the Supreme Court reaffirmed the constitutionality of the requirement that a succeeding owner of stock was compelled to assume the place occupied by his predecessor for the purposes of taxation. Other *income without gain* transactions, in which an income tax was imposed, have likewise been affirmed. See *Helvering v. Midland Mut. Life Ins. Co.*, 300 U. S. 216 (1937); *Burnet v. Sanford & Brooks Co.*, 282 U. S. 359 (1931).

We think the due process clause of the Fourteenth Amendment (and the comparable "law of the land" phrase in Article 23) does not bar the taxation of liquidation distributions as dividends to the extent they represent corporate earnings.

For the reasons stated the judgments must be affirmed. And, if there is an element of unfairness, as there may be, in transactions such as these, then the cure therefor must come from the legislature and not the courts.

*Judgments affirmed; appellants to pay the costs.*