John Leo **BRADY**

v.

**SUPERINTENDENT, ANNE ARUNDEL COUNTY DETENTION CENTER.**

Civ. No. 21215.

United States District Court,
D. Maryland.

July 17, 1970.

———◆———

Elsbeth Levy Bothe, Baltimore, Md., and E. Clinton Bamberger, Washington, D. C., for petitioner.

Francis B. Burch, Atty. Gen. of Maryland, and Alfred J. O'Ferrall, III, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, District Judge.

In this habeas corpus proceeding petitioner seeks release from his present confinement. His two principal contentions are:

"1. That the delay of eight years during which he has been without sentence (of either life imprisonment or death) constitutes a denial of his right to speedy trial guaranteed by the sixth amendment.

"2. That he was denied equal protection of the laws and due process of law when the Maryland courts refused to order the dismissal of his indictment in accordance with Schowgurow v. State, 240 Md. 121, 213 A.2d 475, which case set aside the convictions of all other defendants whose convictions were not final on October 11, 1965."

The background facts are stated in the opinion of the Supreme Court in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as follows:

"Petitioner and a companion, Boblit, were found guilty of murder in the first degree and were sentenced to death, their convictions being affirmed by the Court of Appeals of Maryland, 220 Md. 454, 154 A.2d 434. Their trial were separate, petitioner being tried first. At his trial Brady took the stand and admitted his participation in the crime, but he claimed that Boblit did the actual killing. And, in his summation to the jury, Brady's counsel conceded that Brady was guilty of murder in the first degree, asking only that the jury return that verdict 'without capital punishment.' Prior to the trial petitioner's counsel had requested the prosecution to allow him to examine Boblit's extrajudicial statements. Several of those statements were shown to him; but one dated July 9, 1958, in which Boblit admitted the actual homicide, was withheld by the prosecution and did not come to petitioner's notice until after he had been tried, convicted, and sentenced, and after his conviction had been affirmed.

"Petitioner moved the trial court for a new trial based on the newly discovered evidence that had been suppressed by the prosecution. Petitioner's appeal from a denial of that motion was dismissed by the Court of Appeals without prejudice to relief under the Maryland Post Conviction Procedure Act, 222 Md. 442, 160 A.2d 912. The petition for post-conviction relief was dismissed by

the trial court; and on appeal the Court of Appeals held that suppression of the evidence by the prosecution denied petitioner due process of law and remanded the case for a retrial of the question of punishment, not the question of guilt. 226 Md. 422, 174 A.2d 167. The case is here on certiorari, 371 U.S. 812.

"The crime in question was murder committed in the perpetration of a robbery. Punishment for that crime in Maryland is life imprisonment or death, the jury being empowered to restrict the punishment to life by addition of the words 'without capital punishment.' 3 Md.Ann.Code, 1957, Art. 27, § 413. In Maryland, by reason of the state constitution, the jury in a criminal case are 'the Judges of Law, as well as of fact.' Art. XV, § 5. The question presented is whether petitioner was denied a federal right when the Court of Appeals restricted the new trial to the question of punishment." 373 U.S. at 84, 85, 83 S.Ct. at 1195.

The Supreme Court affirmed the decision of the Court of Appeals. The Court began by stating: "We agree with the Court of Appeals that suppression of this confession was a violation of the Due Process Clause of the Fourteenth Amendment," 373 U.S. at 86, 83 S.Ct. at 1196, and added: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196.

The Court then quoted from the opinion of the Court of Appeals, as follows: " 'The appellant's sole claim of prejudice goes to the punishment imposed. *If Boblit's withheld confession had been before the jury, nothing in it could have reduced the appellant Brady's offense below murder in the first degree. We. therefore, see no occasion to retry that issue.'* 226 Md., at 429–430, 174 A.2d, at 171 (Italics added.)" 373 U.S. at 88,

83 S.Ct. at 1197. After discussing the Maryland law, the Supreme Court concluded: "In the present case a unanimous Court of Appeals has said that nothing in the suppressed confession 'could have reduced the appellant Brady's offense below murder in the first degree.' We read that statement as a ruling on the admissibility of the confession on the issue of innocence or guilt. A sporting theory of justice might assume that if the suppressed confession had been used at the first trial, the judge's ruling that it was not admissible on the issue of innocence or guilt might have been flouted by the jury just as might have been done if the court had first admitted a confession and then stricken it from the record. But we cannot raise that trial strategy to the dignity of a constitutional right and say that the deprival of this defendant of that sporting chance through the use of a bifurcated trial (cf. Williams v. New York, 337 U.S. 241) denies him due process or violates the Equal Protection Clause of the Fourteenth Amendment." 373 U.S. at 90, 91, 83 S.Ct. at 1198.

At the evidentiary hearing in the present habeas corpus proceeding there was a great deal of testimony, some of it conflicting, with respect to what has happened since that time. It would serve no useful purpose to make detailed findings of fact. It is sufficient to say that from May 1963 on, there have been conferences and correspondence between the attorneys for the State, the attorneys for Brady, and a Judge of the Circuit Court for Anne Arundel County. The State repeatedly expressed its willingness to have a hearing at which it would recommend that the Court impose a sentence of life imprisonment. No lighter sentence could have been imposed under the Maryland law and the decisions of the Court of Appeals and the Supreme Court, quoted above. Petitioner was unwilling to agree to any procedure which would result in a life sentence. He said that he would prefer a death sentence. This seemed so unreasonable to his attorneys that they had

him transferred to the Perkins Hospital for the Criminally Insane for a psychiatric examination. His attorneys were careful to avoid agreeing to any procedure which would result in a life sentence. Neither side took any affirmative action to bring the case to trial.

Petitioner's hope was raised by the decision in Schowgurow v. State, 240 Md. 121, 213 A.2d 475, in October 1965. In January 1966 his attorneys filed a proceeding under the Maryland Post Conviction Procedure Act, based upon the *Schowgurow* decision. Relief was denied both by the Circuit Court and by the Court of Special Appeals. Brady v. Warden, etc., 2 Md.App. 146, 233 A.2d 378 (1967). The latter Court said:

> "In *Schowgurow*, the Court of Appeals adopted the definition of 'finality' set forth in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed. 2d 601, wherein the three prerequisites to finality were set out, *viz.*,
>
> 1. the judgment of conviction has been rendered;
>
> 2. the availability for appeal has been exhausted;
>
> 3. the time for petitioning for certiorari to the Supreme Court has elapsed.

Without question the judgment in a criminal case is not 'final' in the usual or traditional sense of that term until the sentence has been imposed. Miller v. State, 1 Md.App. 653, 232 A.2d 548. See also Berman v. United States, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204. We nevertheless are of the opinion— for purposes of applying the *Schowgurow* rule of retroactivity in Brady's case—that his judgment of conviction was not other than 'final' within the meaning of *Schowgurow*, on October 11, 1965, the date of that decision. In excepting 'convictions which have not become final before rendition of this opinion' from the otherwise purely prospective operation of the legal principles announced in their decision, the *Schowgurow* court, in our judgment, did not contemplate the inclusion within such exception of a case in such a highly unique posture as that of Brady—a case in which Brady's conviction had been rendered, a death sentence imposed, and the judgment of conviction affirmed on appeal, and thus finalized prior to *Schowgurow*; but where, in subsequent post conviction proceedings, in which he asserted a constitutional right to a new trial because of the State's suppression of certain evidence, the court expressly limited its granting of a new trial to the 'question of punishment only,' therein delineating as the ultimate inquiry to be pursued 'whether the finding already made of guilty of murder in the first degree should or should not be modified by the addition of the words "without capital punishment." ' Brady v. State, *supra*, 226 Md. at page 430, 174 A.2d 167. Since only two sentencing alternatives were possible on the retrial—life imprisonment or death—and since the issue of Brady's guilt had been wholly foreclosed, we hold that his conviction was not so lacking in finality, within the *Schowgurow* retroactivity rationale, as to entitle him to demand a new indictment and, if newly indicted, to a new trial at which the issue of his guilt or innocence would again be open for consideration. It would be an incongruous result indeed were we to hold that under *Schowgurow* Brady's conviction could not be considered a 'final judgment,' since the availability of appeal from such judgment on the issue of guilt or innocence has been completely exhausted; and he has no right to direct review from the imposition of either of the two sentences authorized by Section 413 of Article 27 of the Maryland Code. See Stevens v. State, 232 Md. 33, 192 A.2d 73, cert. den. 375 U.S. 886, 84 S.Ct. 160, 11 L.Ed.2d 115.

> "We therefore conclude that the post conviction judge correctly denied Brady's petition." 2 Md.App. at 148, 149, 233 A.2d at 379, 380.

During and after that proceeding the parties continued their sparring.

In September 1969 the present habeas corpus proceeding was instituted in this Court. A show cause order was issued, the State answered, an evidentiary hearing was held, and both sides have filed elaborate briefs.

1. There has been a long delay in holding a trial on the question of punishment or a sentencing hearing. The delay was caused both by the failure of the State to bring the matter to a head, and by the efforts of petitioner and his attorneys to prevent such a trial or hearing, in the hope that a better result than a life sentence could be achieved. Petitioner has never formally requested a speedy trial or hearing.

█ █ The discharge of a defendant for denial of a speedy trial is a drastic step, justifiable only when further proceedings against him would harm the interests protected by the Speedy Trial Clause. See Dickey v. Florida, 398 U.S. 30, 39–45, 90 S.Ct. 1564, 1569–1572, 26 L.Ed.2d 26 (1970) (concurring opinion of Mr. Justice Brennan). This case does not involve a deliberate attempt by the State to use delay to harm the accused, or governmental delay that is "purposeful or oppressive." Cf. United States v. Provoo, 17 F.R.D. 183 (D.Md. 1955) aff'd 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). Any prejudice which petitioner has suffered by lapse of time can be cured by a ruling of this Court that he cannot now be sentenced to death, and that he should be promptly given a life sentence, with full credit for the time served in computing the date when he will be eligible for parole.[1]

█ 2. The decision of the Court of Special Appeals on the Schowgurow point did not deprive petitioner of any right under the Federal Constitution. Arbitrary discriminations are not permitted;[2] but this was a unique situation, and this Court holds that the conclusion of the Court of Special Appeals in the passage quoted above was neither arbitrary nor unreasonable.[3]

### Conclusion

Petitioner has never presented the speedy trial question to the Maryland Courts in a habeas corpus, PCPA, or other proceeding. Under the circumstances, however, this Court will not require him to do so, but will deny the relief requested, without prejudice to petitioner's filing another habeas corpus proceeding in this Court if he is not promptly given (a) a sentencing hearing at which a life sentence is imposed, with full credit for the time served for the purpose of computing when petitioner will be eligible for parole, or (b) a trial on the sole issue of the punishment to be imposed, if petitioner affirmatively so elects in writing or in open Court.

It is so ordered.

1. It is not necessary to decide whether there has been an affirmative waiver of the right to a speedy trial. See Pitts v. North Carolina, 395 F.2d 182 (4 Cir. 1968); United States v. Banks, 370 F.2d 141 (4 Cir. 1966), cert. den. 386 U.S. 997, 87 S.Ct. 1317, 18 L.Ed.2d 345 (1967); United States v. Hill, 310 F.2d 601 (4 Cir. 1962); cf. Dickey v. Florida, 398 U.S. 30, 47, 90 S.Ct. 1564, 1574, 26 L.Ed.2d 26 (1970). Note, The Right to a Speedy Criminal Trial, 57 Col.L. Rev. 846, 852–855 (1957).

2. Rinaldi v. Yeager, 384 U.S. 305, 308–309, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); McLaughlin v. Florida, 379 U.S. 184, 188–191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

3. In a somewhat analogous situation involving the applicability of the *Miranda* doctrine to persons whose retrial had commenced after the date of that decision but whose original trials had commenced prior to that date, the Supreme Court noted that the retroactivity technique necessarily entails a balancing of the "incongruities" which may result "against the impetus the technique provides for the implementation of long overdue reforms, which otherwise could not be practicably effected." Jenkins v. Delaware, 395 U.S. 213, 218, 89 S.Ct. 1677, 1680, 23 L.Ed.2d 253 (1969).