**John Leo BRADY, Appellant,**

v.

**SUPERINTENDENT, ANNE ARUNDEL COUNTY DETENTION CENTER,**
Appellee.

**No. 15016.**

United States Court of Appeals,
Fourth Circuit.

Argued April 8, 1971.

Decided June 9, 1971.

---

12. E. g., 28 U.S.C. § 1332 (diversity).

13. For later developments, see Dolgow v. Anderson, 438 F.2d 825 (2d Cir. 1970), modified on rehearing (2d Cir. Jan. 18, 1971).

Elsbeth Levy Bothe, Baltimore, Md. (Court-appointed counsel), for appellant.

Donald R. Stutman, Asst. Atty. Gen. of Maryland (Francis B. Burch, Atty. Gen. of Maryland, and Alfred J. O'Ferrall, III, Asst. Atty. Gen. of Maryland, on brief), for appellee.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

John Leo Brady's 1958 conviction for first degree murder was affirmed but his sentence of death was reversed in Brady v. State, 226 Md. 422, 174 A.2d 167 (1961). A new trial was ordered limited solely to the issue of punishment. The limitation of relief to a trial on the issue of punishment was affirmed by the Supreme Court in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963). At the time of both decisions and at all times thereafter,

Maryland law provided only for the imposition of capital punishment or life imprisonment as punishment for the offense of which Brady had been convicted. Art. 27, § 413, Md.Code (1957).

Notwithstanding the clear direction from the Maryland Court of Appeals and the Supreme Court of the United States of what should be done to close Brady's case, Brady was not afforded a new trial as to punishment for almost eight years. On September 17, 1969, Brady filed a complaint in the district court under 42 U.S.C.A. § 1983, combined with an application for a writ of habeas corpus, alleging that his First, Fifth, Sixth, Eighth and Fourteenth Amendment rights had been violated by his continued incarceration without valid sentence, and that his Fourteenth Amendment rights had been violated by the failure of the Maryland Court of Special Appeals in Brady v. Warden, Maryland Penitentiary, 2 Md.App. 146, 233 A.2d 378 (1967), to apply retroactively the decision of the Maryland Court of Appeals in Schowgurow v. State, 240 Md. 121, 213 A.2d 475 (1965), to invalidate Brady's 1958 conviction.

The district judge denied relief. Brady v. Superintendent, Anne Arundel County Detention Center, 314 F.Supp. 799 (D.Md.1970). He did so without prejudice to another application for a writ of habeas corpus if Brady were "not promptly given" either a sentencing hearing at which a life sentence was imposed with full credit for time served for the purpose of computing eligibility for parole, or a trial on the sole issue of punishment. Brady appealed. Meanwhile, dislodged from further inaction by this properly pointed reminder of the potential exercise of federal judicial power, the State took Brady before the Circuit Court for Anne Arundel County, Maryland; and, over his objection that he wanted a new trial, Brady was sentenced to life imprisonment, the sentence to date from the time of his arrest in July, 1958.

Before us two contentions are pressed: first, that Brady was denied his constitutional right to a speedy trial by the almost eight years' delay in his resentencing and was entitled to be released from custody, and, second, that Brady was denied equal protection and due process when his conviction was not invalidated by a retrospective application of *Schowgurow*. We will assume that Brady's right to a speedy trial was denied him, but, under the exceptional facts of his case, we cannot conclude that he has suffered prejudice sufficient to justify his release. We find no merit in the other contention. We affirm the district court's denial of relief.

I

The district court found that:

from May 1963 on, there have been conferences and correspondence between the attorneys for the State, the attorneys for Brady, and a Judge of the Circuit Court for Anne Arundel County. The State repeatedly expressed its willingness to have a hearing at which it would recommend that the Court impose a sentence of life imprisonment. No lighter sentence could have been imposed under the Maryland law and the decisions of the Court of Appeals and the Supreme Court, quoted above. Petitioner was unwilling to agree to any procedure which would result in a life sentence. He said that he would prefer a death sentence. This seemed so unreasonable to his attorneys that they had him transferred to the Perkins Hospital for the Criminally Insane for a psychiatric examination. His attorneys were careful to avoid agreeing to any procedure which would result in a life sentence. Neither side took any affirmative action to bring the case to trial. 314 F.Supp. at 801–802.

It concluded:

There has been a long delay in holding a trial on the question of punishment or a sentencing hearing. The delay was caused both by the failure of the State to bring the matter to a head, and by the efforts of petitioner and his attorneys to prevent such trial or

hearing, in the hope that a better result than a life sentence could be achieved. 314 F.Supp. at 803.

■ Our review of the record satisfies us that the district judge's general description of what transpired was accurate. The fact is while the passage of some time is attributable to Brady's attorneys' understandable desire to cause the mental competency of their client to be investigated, most of the delay was attributable to the State's unwillingness to carry out the mandates of the Maryland Court of Appeals and the Supreme Court of the United States absent advance agreement on Brady's part as to what was to be done. We deem the State unreasonable in the delay it occasioned by its efforts to seek this concession. It was, of course, not improper to seek agreement, but certainly neither Brady nor his counsel was under any obligation to agree. The State should have paid greater heed to the principle that the burden was on it to bring about a final termination of the prosecution. If agreement on the part of Brady was not forthcoming within a reasonable time, it was the duty of the State to set the matter for trial and shift the burden to Brady to show good cause why the trial as to sentence should not proceed. We can only conclude that to the extent that there was fault in the long delay, the fault was that of the State. We do not understand that the district judge found fault on the part of Brady or his counsel, and we find none.

## II

■ While it is now certain that the Sixth Amendment right to a speedy trial is applicable to the states, Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L. Ed.2d 607 (1969); Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), there is no definitive holding that the right to a speedy trial applies to the period between conviction and sentence. In Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), the Court assumed arguendo that the interval between judgment and sentencing was included within the guarantee. The separate concurrence of Mr. Justice Brennan in Dickey v. Florida, *supra*, strongly suggests that this interval is covered. Mr. Justice Brennan discussing, *inter alia*, the problem of delay between trial and sentence, observed that there is no support in the wording of the Sixth Amendment for the view that the criminal process can be fragmented into various stages and the right to a speedy trial held applicable to some and inapplicable to others. This was said, however, in the context of a case involving the question of delay after arrest but before indictment. Finally, in Welsh v. United States, 348 F.2d 885 (6 Cir. 1965), the Sixth Circuit apparently held that the speedy trial guarantee applied to the period after the conviction but before sentence, although in that case the court concluded that there had been no unreasonable delay. See also, Brooks v. United States, 423 F.2d 1149 (8 Cir. 1970), cert. den., 400 U.S. 872, 91 S.Ct. 109, 27 L.Ed.2d 111 (1971); Whaley v. United States, 394 F.2d 399 (10 Cir. 1968).

Although there are thus strong indications that the Sixth Amendment right to a speedy trial is applicable to the interval between conviction and sentencing, we need not decide that question. Even if we assume that the right applied and was violated here, the consequences suffered by Brady are not sufficient to warrant his release from custody.

Courts have consistently indicated in recent years that in order for delay to immunize a defendant from further proceedings or punishment, rather than merely entitling him to compel the state to proceed, some significant prejudice must either be demonstrated or be implicit in the circumstances. See, *e. g.*, United States ex rel. Solomon v. Mancusi, 412 F.2d 88 (2 Cir. 1969), cert. den., 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed.2d 236 (1969); Pitts v. North Carolina, 395 F.2d 182 (4 Cir. 1968); United States v. Banks, 370 F.2d 141 (4 Cir.

1966), cert. den., 386 U.S. 997, 87 S.Ct. 1317, 18 L.Ed.2d 345 (1967); Hedgepeth v. United States, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966). See also, Note, 57 Colum.L.Rev. 846, 852 (1957); Note, 64 Yale L.J. 1208 (1955).

Some courts have indicated that an exception to the necessity of showing prejudice exists where the government delay is unjustified or deliberate. The Supreme Court stated in Pollard v. United States, *supra*, that "[w]hether delay in completing a prosecution such as here occurred amounts to an unconstitutional deprivation of rights depends upon the circumstances * * *. The delay must not be purposeful or oppressive." 352 U.S. at 361, 77 S.Ct. at 486. In *Pollard*, the Court concluded that the delay was merely a product of mistake on the part of the trial court, and so was not purposeful. No circuit has applied this language in *Pollard* to release a prisoner because of deliberate delay which was not significantly prejudicial, although some courts have adopted language indicating that they would do so. Cf. e. g., Williams v. United States, 102 U.S.App.D.C. 51, 250 F.2d 19 (1957), in which Judge Bazelon expressed that view in a majority opinion but indicated that his co-panelists had not expressed agreement. The contrary view—that some prejudice must be shown—seems to have been expressed by Mr. Justice Brennan in his extensive concurrence in Dickey v. Florida, *supra*, in which he stated that "[t]he discharge of a defendant for denial of a speedy trial is a drastic step, justifiable only when further proceedings against him would harm the interests protected by the Speedy Trial Clause. Thus it is unlikely that a prosecution must be ended simply because the government has delayed unnecessarily, without the agreement of the accused." 398 U.S. at 52, 90 S.Ct. at 1576. The same position is taken in Note, 64 Yale L.J. 1208, 1211 (1955).

■ Here, there is no evidence that the state had a malicious intent to delay or that its objective was to obtain some unfair advantage. No prejudice to defendant is implicit in the state's purposes, nor is any general pattern of delay evident which should be met by a prophylactic rule providing for release regardless of the effects of delay in individual cases. Mere lack of diligence on the state's part, while deserving of censure, has been held not to amount to that "purposiveness" which was established as a grounds for release in *Pollard*. United States v. DeLeo, 422 F.2d 487, 494–495 (1 Cir.), cert. den., 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970). Under the circumstances, we are unwilling to release the defendant, who stood convicted of a heinous crime, unless it appears that the state's wrongful delay in sentencing had some significant effect on his rights.

■ In some cases involving long delays before trial, sufficient prejudice has been presumed from the ineluctable increased difficulties of proof resulting from the passage of time, or the burden has been shifted to the government to prove the absence of prejudice. *E. g.*, Hedgepeth v. United States, *supra*; Williams v. United States, *supra*. But where, as here, the delay falls between conviction and sentence, and at sentencing defendant receives the minimum punishment that could be imposed, the prejudicial effect of delay cannot be assumed.

■ As summarized in one of the Court's latest expressions, the Sixth Amendment guarantee to a speedy trial

has universally been thought essential to protect at least three basic demands of criminal justice in the Anglo-American legal system: '[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself.' United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 [630].

Smith v. Hooey, *supra*, 393 U.S. at 378, 89 S.Ct. at 577. Consideration of each

of these three demands in light of the special facts here leads us to conclude that Brady's rights were not violated to the extent that he is entitled to release.

Brady was a convicted murderer whose conviction was final. Under Maryland law he could be punished in only one of two ways: life imprisonment (the sentence he finally received) or death. It is at once obvious that Brady's is not a case in which the first category consideration was present. The delay in sentencing Brady did not result in any additional incarceration; had he been sentenced sooner, he would have still been incarcerated at the present time, and his date of eligibility for parole would have been no different from what it will be under the sentence he received.

Some second category considerations are present. We recognize that there may have been anxiety on Brady's part that he would be sentenced to capital punishment although there is evidence in the record that at one time Brady expressed a preference for death rather than life imprisonment. But it appears that there were no grounds for such anxiety after early 1966, when the judge of the Circuit Court for Anne Arundel County indicated his willingness to impose a life sentence. After this, the state on several occasions reiterated its willingness to agree to a life sentence. During the period between May, 1963, when the Supreme Court affirmed his case, and early 1966, when it became clear that a life sentence was available, Brady was subject to uncertainty as to which sentence he would receive. But some of this three-year delay is attributable to the efforts of his counsel to establish his mental incompetence; in 1964 he spent three months under observation in a mental hospital for this purpose. The remainder of the delay was a period of unjustified anxiety for Brady which must be weighed as an interest on the side of relief here.

The fact that Brady was sentenced to the lesser penalty disposes of the third category consideration. Brady received the less onerous possible sentence. Therefore, any impairment to Brady's ability to defend himself could not have been prejudicial. His case might have been far different if, after long delay, the state was seeking to sustain capital punishment. Even then it would be doubtful if Brady would be entitled to release rather than resentenced to the lesser penalty.

In argument, Brady's counsel contended that Brady was prejudiced by the delay in two additional respects. First, it was argued that during a part of the period of delay Brady was kept on death row where he was subject to greater restrictions than those imposed upon the general prison population. It is argued also that for over eight years he was denied access to the rehabilitation program available in the Maryland penal system and that, because sentence was not imposed much more promptly, Brady will be prejudiced in favorable consideration of his case by the parole authorities when he becomes eligible for parole. We are not persuaded.

The record is devoid of any proof of any rehabilitative program of which Brady would have been a part had the imposition of sentence not been delayed. Additionally, a not inconsiderable period of time still must elapse before Brady completes the minimum service of sentence for parole eligibility. If there is a rehabilitation program which will rehabilitate Brady or improve his chances for early parole, there is ample opportunity for him to participate and prove his worth. As to prejudice to his eligibility for parole, we would find it hard to believe that Maryland authorities would hold against him his inability to establish a good record in activities from which he was barred prior to final sentence, since we have concluded that to the extent that delay in the imposition of sentence was caused by fault, the fault was that of the State. Should it appear, when the date of eligibility for parole is reached, that parole is denied, wholly or in part, because the imposition

of sentence was delayed, Brady will not be foreclosed from seeking appropriate judicial relief.

■ While it thus appears that the delay in sentencing Brady did subject him to anxiety and restriction during part of the delay, his rights in the determination of sentence and eligibility for parole were not adversely affected. Under the circumstances, including the fact that Brady's anxiety and discomfort followed rather than preceded the final determination of his guilt of a most serious crime, we are constrained to conclude that if the right to speedy trial applies here and was denied, there was not sufficient prejudice to warrant Brady's release.

### III

In Schowgurow v. State, 240 Md. 121, 213 A.2d 475 (1965), the Maryland Court of Appeals held invalid indictments and convictions by grand and petit juries, respectively, the members of which had been required to swear a belief in a Supreme Being. The holding was made inapplicable to convictions which were final prior to the date of decision (October 11, 1965) of that case. Brady sought to have his conviction invalidated under this doctrine, but the Maryland Court of Special Appeals, in Brady v. Warden, Maryland Penitentiary, 2 Md.App. 146, 233 A.2d 378 (1967), decided that *Schowgurow* did not apply since Brady's conviction of guilt became final on May 13, 1963, when the decision in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), was announced by the Supreme Court.

■■ We perceive no due process or equal protection objection to the decision. Brady's case is unique on its facts so far as the possible application of *Schowgurow* is concerned. *Schowgurow* was not a decision which went to the integrity of the fact-finding process. Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Brady's guilt was finally determined more than two years before *Schowgu-*

*row*. There was thus a rational basis to treat Brady differently from other defendants whose guilt had not been determined or finally litigated. See, Williams v. United States (Mackey v. United States), 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (April 5, 1971) (Harlan, J., concurring and dissenting) ("At some point, the criminal process, if it is to function at all, must turn its attention from whether a man ought properly to be incarcerated to how he is to be treated once convicted.") The Maryland courts have a large measure of discretion in deciding the time from which a new legal principle is to be deemed controlling. Jenkins v. Delaware, 395 U.S. 213, 218, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969). We cannot say that that discretion was abused.

Affirmed.