# ERBE *v.* STATE OF MARYLAND

[No. 39, September Term, 1975.]

*Decided January 7, 1976.*

542

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Kenneth A. Reich*, with whom were *William L. Marbury* and *Piper & Marbury* on the brief, for appellant.

*Bernard A. Raum, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Clarence W. Sharp, Assistant Attorney General*, on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. DIGGES and ELDRIDGE, JJ., dissent and DIGGES, J., filed a dissenting opinion in which ELDRIDGE, J., concurs at page 566 *infra*.

In this case appellant, Ronald Ashton Erbe (Erbe), was convicted on June 25, 1969, but was not sentenced until July 1, 1974. The trial court denied his motion to dismiss for lack of speedy sentencing. The Court of Special Appeals affirmed in *Erbe v. State*, 25 Md. App. 375, 336 A. 2d 129 (1975). We granted the writ of certiorari in order that we might consider the matter. We, also, shall affirm.

Erbe was arrested in Baltimore on September 30, 1968, on charges of housebreaking and theft; released from jail on bond on October 2; indicted on October 21 on charges of housebreaking, rogue and vagabond, theft, and receiving stolen goods; and arraigned on October 31, at which time he pleaded not guilty. Counsel was formally appointed on June 25, 1969. Erbe was tried and convicted by the court on that date of two of these charges, he having elected a court trial. The trial judge held sentencing *sub curia* and Erbe was released in the custody of his attorney. For some inexplicable reason the case records apparently were lost until January, 1973, when in the course of a survey of pending cases, it was discovered that Erbe had not been sentenced. Sentencing was then set for March 5, 1973, with notice left at Erbe's last known address. There is no evidence that Erbe was served or had actual notice of the hearing. A bench warrant was issued when he failed to appear on that date. He was arrested on December 19, 1973, when he sought police clearance for a job as a truck driver. He remained in jail until January 16, 1974. On that date his present counsel filed a motion to dismiss because of the delay in sentencing. An evidentiary hearing was held and the motion denied. Erbe was then released on his own recognizance pending completion of a presentence report. He was sentenced on July 1, 1974, to concurrent terms of three years. Sentence was suspended in each instance and Erbe was placed on probation for three years and ordered to make restitution. The trial judge said that when the matter came to light neither the Baltimore City criminal assignment office nor the state's attorney's office was willing to accept responsibility for the matter's not having been set down for disposition, each office claiming "that it was not the responsibility of their office to set the case in for disposition or scheduling for further hearings."

In this Court Erbe presents three questions, (1) whether the delay here "caused by the negligence of the State is a denial of [his] right to a speedy trial," (2) whether the delay is a violation of due process, and (3) whether "the . . . delay is 'unreasonable' in violation of Maryland Rule 761 a."

For purposes of consideration of Erbe's first contention we shall assume, *arguendo*, as did the Supreme Court of the United States in *Pollard v. United States*, 352 U. S. 354, 361, 77 S. Ct. 481, 1 L.Ed.2d 393 (1957), "that sentence is part of the trial for purposes of the Sixth Amendment" to the Constitution of the United States and Art. 21 of the Maryland Declaration of Rights, *but see Ash v. State*, 238 Md. 317, 208 A. 2d 691 (1965). In *Ash*, there was complaint relative to a delay of seven months between the time of filing of a motion for new trial and the denial of the motion. This was claimed to be a violation of the speedy trial guarantee in Art. 21 of the Maryland Declaration of Rights. Judge Sybert there said for the Court:

> "Although there is no question but that the appellant was entitled to a speedy trial, we hold that this right has no application to a hearing on a motion for a new trial. We think the language used by the drafters of Art. 21 clearly imports guarantees applicable to the processes leading to and ending with the criminal trial itself, and we do not believe that either the motion for a new trial or the hearing thereon constitutes a 'trial' or any constituent part thereof within the meaning of Art. 21." *Id.* at 320.

I

Speedy Trial as Guaranteed by the
Maryland Declaration of
Rights

Maryland Declaration of Rights, Art. 21 provides " [t]hat in all criminal prosecutions, every man hath a right . . . to a speedy trial . . . ." Identical language was adopted as Art. 19 of the Declaration of Rights in the Constitution of 1776, prior to the adoption of the Constitution of the United States and thus prior to the adoption of the Sixth Amendment to that Constitution. This Court has said in construing Declaration of Rights, Art. 23 relative to due process that the decisions of the Supreme Court construing the due

process clause of the Fourteenth Amendment are 'practically direct authority." *See, e.g., Bureau of Mines v. George's Creek,* 272 Md. 143, 156, 321 A. 2d 748 (1974); *Rafferty v. Comptroller,* 228 Md. 153, 161, 178 A. 2d 896 (1962); *Home Utilities Co. v. Revere,* 209 Md. 610, 614, 122 A. 2d 109 (1956); and *Goldsmith v. Mead Johnson & Co.,* 176 Md. 682, 686-687, 7 A. 2d 176 (1939), citing A. Niles, *Maryland Constitutional Law* (1915) 48. Judge Niles in his work divides the 45 articles of the Maryland Declaration of Rights into four classes. He places Art. 21 in "Class C" entitled "Limitations on the power of the State similar to those limitations prescribed in the United States Constitution for the Federal Government." Although this Court does not appear to have commented relative to Art. 21 as it has with respect to Art. 23, Judge Niles says of Class C:

> "These articles are, of course, of great importance. In regard to their construction, the decisions of the United States Court [sic], in reference to the corresponding provisions of the Federal Constitution, are adopted by our court as authority which is very persuasive, although not necessarily controlling. The Federal constitutional law, therefore, construing these articles of the Federal Constitution is pertinent upon the construction of articles of this class in our State Declaration of Rights." *Id.* at 13.

This Court held in *State v. Murdock,* 235 Md. 116, 124, 200 A. 2d 666 (1964), *cert. denied* 379 U. S. 914, that inaction on the part of an accused would "constitute a waiver of his right to a speedy trial" under Art. 21 of our Declaration of Rights. *Accord Swift v. State,* 224 Md. 300, 305, 167 A. 2d 762 (1961), and *Harris v. State,* 194 Md. 288, 297, 71 A. 2d 36 (1950).

All of the above cited cases were decided prior to the decision of the Supreme Court in *Barker v. Wingo,* 407 U. S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972), which we shall hereafter discuss at length. The language used in Art. 21 of our Declaration of Rights relative to speedy trial is virtually

identical with that in the Sixth Amendment to the Constitution of the United States. If this case had arisen prior to *Barker*, we would say quickly upon the strength of our prior decisions that since Erbe did not request sentencing in the intervening period he is deemed to have waived any rights conferred upon him by Declaration of Rights, Art. 21. Although we certainly anticipate no such change, it is possible that the Supreme Court might change the views it expressed in *Barker*. Instances have been known of its changing its views. *See e.g.* the discussion in *Mangum v. Md. St. Bd. of Censors*, 273 Md. 176, 187-93, 328 A. 2d 283 (1974), relative to obscenity. We need not decide today whether the concepts expressed in *Murdock*, *Swift*, and *Harris* remain viable in the light of *Barker*. It will be sufficient to state only that we shall for purposes of our decision today regard our discussion of the Sixth Amendment right to a speedy trial as equally applicable to the right provided in Declaration of Rights, Art. 21.

## II

### Sixth Amendment Claim

*Barker* was discussed at length by Judge O'Donnell for this Court in the recent case of *Epps v. State*, 276 Md. 96, 345 A. 2d 62 (1975). In *Barker* at p. 516 of 407 U.S. the Supreme Court noted that in no prior case had it attempted to set out the criteria by which the right to a speedy trial should be judged. It then proceeded "to make such an attempt." It found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months," "reject[ed] . . . the rule that a defendant who fails to demand a speedy trial forever waives his right," and adopted "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." It pointed out that such a test "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis," and it "c[ould] do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." Although acknowledging that "some might express them in different ways," the Court

identified "four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

### a. Length of the Delay

In *Barker* Mr. Justice Powell said for the Court on the subject of delay:

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 530-31.

Because the length of the delay here is unusually long, it becomes important to determine how significant the mere length of delay is in assessing an alleged denial of the right to a speedy trial. In *Barker* there was a delay of approximately five years between arrest and trial. The Court considered this "extraordinary," but found it outweighed by other factors and held there was no denial of the right. Mr. Justice Brennan, in his concurring opinion in *Dickey v. Florida,* 398 U. S. 30, 90 S. Ct. 1564, 26 L.Ed.2d 26 (1970) (decided prior to *Barker*), listed the four factors mentioned in *Barker* and said they "are often mentioned as the determinants of reasonableness." He noted, "The length of the delay, however, appears to be significant principally as it affects the legitimacy of the reasons for delay and the likelihood that it had prejudicial effects. . . ." 398 U. S. at 48, n. 12.

In *United States v. Brown,* 354 F. Supp. 1000, 1002 (E.D. Pa. 1973), the court observed that "delay is the least conclusive of the four factors identified in *Barker* . . . ." In

*United States v. Spoonhunter,* 476 F. 2d 1050, 1057 (10th Cir. 1973), the court said that " [t]he mere passage of time does not, per se, establish an unconstitutional denial of a right to a speedy trial."

In *United States v. Macino,* 486 F. 2d 750 (7th Cir. 1973), the court analyzed the delay factor from two approaches:

> "It can, on the one hand, be viewed merely as the 'triggering mechanism' which precipitates a speedy trial issue. Viewed as such, its significance in the balance is not great. On the other hand, delay is inextricably tied to the question of prejudice. As the length of the delay extends, the more certain prejudice is to result. It is manifest that prejudice, always a difficult thing to ascertain, must, at some point, be presumed to result from an inordinate delay in bringing a defendant to trial. Exactly where that point lies on the spectrum of pretrial delay is uncertain, but it is clear that the longer the delay, the heavier the weight to be given it in the balance. Such was explicitly recognized by the District of Columbia Circuit in United States v. Holt, 145 U.S. App. D.C. 185, 448 F.2d 1108-1109 (1971):

>> Time is the most important factor; the longer the delay between arrest and trial the heavier the burden on the Government will be in arguing that the right to a speedy trial has not been abridged. The defense claim has prima facie merit if the lapse between arrest and trial is longer than one year." *Id.* at 752.

The Supreme Court recognized in *Barker* that delay was inextricably tied to prejudice, speaking, as we have noted, of delay "which is presumptively prejudicial" so as to necessitate "inquiry into the other factors that go into the balance." In *Strunk v. United States,* 412 U. S. 434, 439, 93 S. Ct. 2260, 37 L.Ed.2d 56 (1973), by way of dicta, the Court referred to recognition under the speedy trial guarantee "that a prolonged delay may subject the accused to an emotional

stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving — uncertainties that a prompt trial removes." However, the Court has not said that such prejudice would be assumed from any delay which would mandate a determination that there was a denial of the right to a speedy trial. The court in *Macino* was considering the interaction of the two factors in the context of a pretrial delay. A presumptive prejudice from an inordinate delay in bringing a man to trial does not present the same question as prejudice after conviction because the concerns of defendants in such positions are so entirely different. While the delay in this case may be "inordinate," it should not, as an isolated factor, influence the balancing process to any significant degree. *See United States v. Altro*, 358 F. Supp. 1034, 1038 (E.D. N.Y. 1973), and *United States v. Favaloro*, 493 F. 2d 623, 626 (2d Cir. 1974), where four year delays between arrest and trial were held not to be per se denials of a speedy trial. *See also United States v. James*, 459 F. 2d 443, 444, *cert. denied*, 409 U. S. 872 (5th Cir. 1972), where it was held that a defendant "ha[d] suffered no meaningful loss of or injury to his rights" when there was a three year delay between conviction and sentencing.

### b. Reason for Delay

*Barker* identified three categories of reasons that might be assigned by the prosecution in a given case to justify the delay:

> "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* 407 U. S. at 531.

In *Barker*, the Court considered that only seven months of the five year period could "be attributed to a strong excuse, the illness of the ex-sheriff who was in charge of the investigation." It said that the rest of the delay was caused by the State's desire to convict another individual who participated in the murder in order that problems of self-incrimination would be removed and he could be forced to testify against Barker. The Court observed:

> "Perhaps some delay would have been permissible under ordinary circumstances, so that Manning could be utilized as a witness in Barker's trial, but more than four years was too long a period, particularly since a good part of that period was attributable to the Commonwealth's failure or inability to try Manning under circumstances that comported with due process." *Id.* 407 U. S. at 534.

The delay in Erbe's case stemmed from inadvertence on the part of the State since, apparently, no one realized that Erbe had been convicted but not sentenced. This delay would then fall into the middle *Barker* classification as a "more neutral reason." The length of the delay and the neutrality of the reason as factors to be considered are thus comparable to those factors in *Barker* where the Supreme Court upheld the conviction. Although the State was not diligent in Erbe's case, there is not the slightest implication that it failed to act in good faith. *See United States v. Toy*, 482 F. 2d 741, 743 (D.C. Cir. 1973), and *United States v. Tortorello*, 391 F. 2d 587, 589 (2d Cir. 1968). Although the latter case was decided before *Barker*, the four factors used were those enunciated in *Barker*.

### c. Defendant's Asserting Right

In *Barker*, the Court found the most important factor weighing against finding a violation of Barker's speedy trial right was "the fact that Barker did not want a speedy trial." It observed:

> " [T]he record strongly suggests that while he hoped to take advantage of the delay in which he

had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried. Counsel conceded as much at oral argument:

'Your honor, I would concede that Willie Mae Barker probably — I don't know this for a fact — probably did not want to be tried. I don't think any man wants to be tried. And I don't consider this a liability on his behalf. I don't blame him.' Tr. of Oral Arg. 39.

The probable reason for Barker's attitude was that he was gambling on Manning's acquittal." *Id.* 407 U. S. at 535.

The Court evaluated Barker's silence in the light of the general theory:

"Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.*" *Id.* 407 U. S. at 531-32. (Emphasis added.)

A number of federal cases have drawn the inference of no prejudice from a failure to assert the right. *See, e.g., United States v. Infanti,* 474 F. 2d 522, 528 (2d Cir. 1973); *United States v. Reynolds,* 489 F. 2d 4, 7 (6th Cir. 1973), *cert. denied,* 416 U. S. 988 (1974); *United States v. Jones,* 475 F. 2d 322, 324 (D.C. Cir. 1972); *United States v. Churchill,* 483 F. 2d 268, 273 (1st Cir. 1973); and *United States v. Saglimbene,* 471

F. 2d 16, 18 (2d Cir. 1972), *cert. denied,* 411 U. S. 966 (1973). In the latter case the court found the defendant's failure to assert his right especially significant because it was in his self-interest. He had pleaded not guilty to a charge of violating the narcotics laws on April 29, 1965. He was released on bail the same day. Ultimately, the government moved to sever Saglimbene's trial from that of a co-defendant. In April, 1967, the co-defendant failed to appear for trial. From then until January, 1971, the government did not press the prosecution of Saglimbene and he made no effort to speed his trial. In January, 1971, however, the trial judge ordered that the case against Saglimbene be brought to trial. He did not appear for trial and a bench warrant was issued for his arrest. He surrendered to the authorities two months later and then made his first request for a speedy trial. The next day the government requested a continuance because it could not locate an essential witness. The witness was found and the trial was finally held about four weeks later. The court observed that the flight of Saglimbene's co-defendant "presented [him] with an attractive course of action. He believed that as long as Piparo was at large the government would not press for his (Saglimbene's) trial. Thus, Saglimbene was content to wait and hope that Piparo was never caught." The court found that he was not denied a speedy trial.

We referred in the first section of this opinion to *State v. Murdock,* 235 Md. 116, and *Harris v. State,* 194 Md. 288. Although both of those cases were decided before *Barker,* it is significant that both cases quoted from *State v. McTague,* 173 Minn. 153, 216 N. W. 787 (1927), where the court said:

> "There is no just reason why an accused should not demand a trial, resist a postponement, or take some action indicating to the court that he believes he is being deprived of his statutory or constitutional right as a foundation for his application for a dismissal." *Id.* at 155.

In *Murdock* Judge Prescott for the Court italicized the

language just quoted which appears consistent with that said by the Supreme Court in *Barker*. An inference that a defendant suffered no prejudice from his failure to assert the right is well-founded when a defendant is in a position to benefit from the delay. This was clearly illustrated in *Saglimbene* where the defendant had reason to suppose that the government might not ever proceed against him. It also was well-illustrated in *Murdock* where Judge Prescott observed for the Court (235 Md. at 122) that Murdock "steered a course of inaction by which it was difficult for him to worsen his position." The inference of no prejudice is almost as clear in Erbe's case: he was free; he had no worries about the passage of time impairing his defense; and his conviction was certain. All he had to gain by asserting his right was time in jail. It seems fair to infer that he was not interested in hastening this eventuality.

### d. Prejudice

In *Barker* the Court recognized three interests of defendants, which should be considered in assessing prejudice to a defendant from delay: (407 U. S. at 532) " (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired," with the latter being "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." The first interest is clearly not applicable here since Erbe was only incarcerated for one month, and that was when he was arrested *subsequent* to his conviction because of his failure to appear for sentencing. The third interest is likewise not applicable because Erbe's trial was held prior to any delay. Erbe here argues, however, that this interest is applicable " [b]ecause he cannot appeal until sentenced . . . [and] [i]n the event the appeal is successful and a new trial ordered, delay at any stage may significantly impair the defense as witnesses disappear or their memories fade." [1] There was no motion

---

**1.** However, it is plain under Jones v. State, 241 Md. 599, 600-01, 217 A. 2d 367 (1966), and Harris v. State, 194 Md. 288, 294, 71 A. 2d 36 (1950), that denial of a speedy trial is a final judgment from which the right of immediate appeal exists.

for a new trial in this case. Under Maryland Rules 567 a and 759 a, it was necessary for any such motion to be filed within three days of the entry of the verdict. In the appeal to the Court of Special Appeals there was no attempt to obtain a new trial, the only challenge in that court being based upon the delay in sentencing.

This case is distinguishable from *Juarez-Casares v. United States*, 496 F. 2d 190 (5th Cir. 1974). In that case there was a delay in sentencing from March 26, 1970, until November 14, 1972. In response to a question from the court the defendant admitted that after he had been released from confinement in 1971 for a separate crime "he had gone to Oklahoma and done the 'same thing again.' " The court observed:

> "In answer to the argument of defense counsel that no sentence could be imposed because so much time had elapsed since the entry of the guilty plea, the court said, 'The court deferred sentencing, and if he had not got in this other trouble I might not have given him time to serve, but it is obvious that this man is not going to profit by his past experiences . . . .' The court stated to appellant, 'It is possible I would have imposed a different sentence if you had behaved yourself. I was waiting to see what you were going to do. You get out and get right back into the same thing. . . .' The court then imposed the maximum sentence of six months on each of the 11 counts, the sentences to be served consecutively." *Id.* at 191-92.

No such prejudice can be asserted by Erbe.

The second interest set forth in *Barker* to be considered in determining prejudice was that of minimizing the anxiety and concern of the accused. The Court in *Barker* recognized that "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." 407 U. S. at 533. It is obvious that in recognizing the defendant's anxiety as an interest to be protected the Supreme Court envisioned the disadvantages experienced by

a prisoner whose guilt has not yet been determined. Chief Judge Orth in *Erbe v. State, supra,* persuasively stated the difference between such an individual and Erbe when he said for the Court of Special Appeals:

"In addition, when the *Barker* court talked in terms of anxiety and concern of the accused, it was referring to a presumptively innocent defendant who must exist under a cloud of suspicion and uncertainty. See *Klopfer v. State of North Carolina,* [386 U. S. 213,] at 222 [(1967)]. But when the defendant is found guilty his presumption of innocence dissipates. While he awaits sentencing he may still be under a cloud, but it is not a cloud of 'public accusation,' *Klopfer, supra,* but a cloud of public guilt generated by the finding beyond a reasonable doubt that he did commit the wrongs alleged. See [*People v.*] *Valdespino,* [15 Cal.App.3d 207, 93 Cal. Rptr. 142 (1971)]. The major concerns of the speedy trial guarantee either do not apply after conviction or are of only speculative moment. Any real prejudice suffered by an individual as a result of an unreasonable delay in sentencing may be remedied under due process principles." *Id.* 25 Md. App. at 387.

Although Erbe argues that the anxiety he has been caused to endure — anxiety which he could have relieved quickly by requesting that he be sentenced — is such that prejudice should be found, it should be noted that although the Court recognized prejudice resulting from anxiety in *Barker,* it attached minimal significance to this factor in the final analysis. After discussing the length of the delay and the lack of justification for it, the Court said:

"Two counterblancing factors, however, outweigh these deficiencies. The first is that prejudice was minimal. Of course, Barker was prejudiced to some extent by living for over four years under a cloud of suspicion and anxiety. Moreover, although he was

released on bond for most of the period, he did spend 10 months in jail before trial. But there is no claim that .any of Barker's witnesses died or otherwise became unavailable owing to the delay. The trial transcript indicates only two very minor lapses of memory — one on the part of a prosecution witness — which were in no way significant to the outcome." *Id.* 407 U. S. at 534.

*Brady v. Superintendent, Anne Arundel Co. Det. Ctr.,* 443 F. 2d 1307 (4th Cir. 1971), was decided before *Barker* and after *Pollard.* Brady and another were convicted of murder in the first degree and sentenced to death. The convictions were affirmed by this Court in *Boblit v. State,* 220 Md. 454, *sub nom. Brady v. State,* 154 A. 2d 434 (1959). Brady instituted a proceeding under the Post Conviction Procedure Act which reached this Court in *Brady v. State,* 226 Md. 422, 174 A. 2d 167 (1961). Our predecessors at that time reversed and remanded the case for a new trial on the question of punishment only. This was affirmed by the Supreme Court in *Brady v. Maryland,* 373 U. S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963). As Judge Winter put it for the Fourth Circuit, "Notwithstanding the clear direction from the Maryland Court of Appeals and the Supreme Court of the United States of what should be done to close Brady's case, Brady was not afforded a new trial as to punishment for almost eight years." Brady contended that he was denied his constitutional right to a speedy trial by this delay and was entitled to be released from custody. Unlike Erbe who was at large, Brady was confined during the entire period. Under our statutes there were only two penalties that could be imposed, death or life imprisonment. The district court found that " [t]he State repeatedly expressed its willingness to have a hearing at which it would recommend the Court impose a sentence of life imprisonment," to which Brady was unwilling to agree, saying "that he would prefer a death sentence." The district court observed that " [t]his seemed so unreasonable to his attorneys that they had him transferred to the Perkins Hospital for the Criminally Insane for a psychiatric examination." Brady was ultimately sentenced

over his objection that he wanted a new trial. Judge Winter said for the court:

"Although there are thus strong indications that the Sixth Amendment right to a speedy trial is applicable to the interval between conviction and sentencing, we need not decide that question. Even if we assume that the right applied and was violated here, the consequences suffered by Brady are not sufficient to warrant his release from custody." *Id.* at 1310.

\* \* \*

"In some cases involving long delays before trial, sufficient prejudice has been presumed from the ineluctable increased difficulties of proof resulting from the passage of time, or the burden has been shifted to the government to prove the absence of prejudice. *E.g.*, Hedgepeth v. United States, [124 U.S. App. D. C. 291, 364 F.2d 684 (1966)]; Williams v. United States, [102 U.S. App. D.C. 51, 250 F.2d 19 (1957)]. But where, as here, the delay falls between conviction and sentence, and at sentencing defendant receives the minimum punishment that could be imposed, the prejudicial effect of delay cannot be assumed." *Id.* at 1311.

\* \* \*

"While it thus appears that the delay in sentencing Brady did subject him to anxiety and restriction during part of the delay, his rights in the determination of sentence and eligibility for parole were not adversely affected. Under the circumstances, including the fact that Brady's anxiety and discomfort followed rather than preceded the final determination of his guilt of a most serious crime, we are constrained to conclude that if the right to speedy trial applies here and was denied, there was not sufficient prejudice to warrant Brady's release." *Id.* at 1313.

We find the reasoning in *Brady* to be dispositive of many of the claims of prejudice made by Erbe.

It should be noted that an affirmative demonstration of prejudice is not a prerequisite to proof of a denial of a defendant's right to a speedy trial. That this was the intent of the Supreme Court in *Barker* was made clear in *Moore v. Arizona*, 414 U. S. 25, 94 S. Ct. 188, 38 L.Ed.2d 183 (1973). It must be borne in mind that in *Barker* the Court said:

> "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.* 407 U. S. at 533.

In *Moore,* "almost three years after he was charged and 28 months after he first demanded that Arizona either extradite him from California, where he was serving a prison term, or drop a detainer against him, petitioner was tried for murder in Arizona." 414 U. S. at 25. The Arizona Supreme Court ruled that a showing of prejudice to the defense at trial was essential to establish a federal speedy trial claim. It found no such prejudice to Moore. The Supreme Court of the United States, however, quoting the above passage from *Barker,* asserted:

> "*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." *Id.* 414 U. S. at 26.

The case was remanded for assessment under the proper standards. While the absence of prejudice to Erbe is a very strong factor in favor of finding his right was not violated, our decision need not rest on this alone.

## e. Balancing of the Factors [2]

The factors enumerated in *Barker* were balanced by the Supreme Court of Delaware in *Johnson v. State*, (Del. 1973) 305 A. 2d 622, *cert. dismissed*, 413 U. S. 901. In that case Johnson entered a guilty plea on April 4, 1968, but was not sentenced until April 28, 1972. He sought to have the sentence vacated on the basis of a delay between 1968 and 1970 which he claimed denied him his Sixth Amendment right to a speedy trial. After his guilty plea he had been returned to Virginia to serve out the remainder of a sentence there. The trial court notified Johnson's attorney that Johnson would not be sentenced until he served the Virginia sentence. Chief Justice Wolcott said for the court:

---

**2.** D. Rudstein, The Right to a Speedy Trial: Barker v. Wingo in the Lower Courts, 1975 Illinois Law Forum 11, 15, states that " [t]he first element of the *Barker* balancing process is the length of the delay." He then goes on to state:

"Only three courts have held that a delay longer than 1 year did not require an analysis of the other factors of the balancing process. Two of these courts, the Maryland Court of Special Appeals and the Michigan Court of Appeals, did so because they took a peculiar approach to computing the length of delay. While most courts take the delay as the period between the time the defendant's right to a speedy trial attached and the time of his trial, these two courts have added a second step to the computation. After determining the total length of the delay, these courts then subtracted either the period of time found not to be attributable to the prosecution, or the period of time necessary for the orderly processing of the case." *Id.* at 18.

His cited examples in n. 36 included Davidson v. State, 18 Md. App. 61, 305 A. 2d 474 (1973), and State v. Jones, 18 Md. App. 11, 305 A. 2d 177 (1973). It is then stated in the same footnote that " [t]hese courts have not consistently followed this approach. *See* Williams v. State, 17 Md. App. 110, 115-19, 299 A. 2d 878 (1973) . . . ," and two opinions of the Michigan intermediate appellate court. The observation is then made, "each of these cases presented factual situations which would have permitted the court to subtract from the total period of delay that portion for which the State was not responsible, yet in each case the court apparently treated the total period as the length of the delay and then considered the period attributable to the defendant as a reason for the delay."

Good mathematics teachers observe that there are a number of ways of solving any given problem in mathematics. At times this principle is equally true in legal matters. It was obvious in *Williams* that the defendant had not been deprived of his right to a speedy trial. It just was not necessary to go into a computation such as was done in the other cited cases. However, by making this comment we are not to be understood as either approving or disapproving the approach of the Court of Special Appeals in any of the three decisions cited by the author since the point is not before us.

"The reasons for postponing sentencing were: (1) the sentence to be imposed in Delaware was dependent on his mental health and emotional stability at the time of imposition; (2) he would gain nothing by being sentenced before he could actually start to serve the Delaware sentence; (3) the Court would want to know how long he had actually been in prison outside of Delaware; (4) the Court would like to know what rehabilitative progress he had made while in the Virginia prison." *Id.* at 623.

Apparently, the Virginia sentence was completed in August, 1969. The defendant was arrested in Virginia in 1970 upon a Governor's warrant at the instance of Delaware. He instituted habeas corpus proceedings in the Virginia courts. There was no indication as to how long those proceedings took. The court observed that " [t]here is no definitive decision as to whether the Sixth Amendment guarantee of a speedy trial applies to the interval between conviction, or entry of a guilty plea, and sentencing," citing *Brady*. It went on, however, to assume *arguendo*, as do we here, that the guarantee applies to this interval. In evaluating the case under the standards set forth in *Barker* and concluding "that there ha[d] been no deprivation of the defendant's assumed right to a speedy sentencing," the court gave the following reasons:

"When the facts of this case are considered in this light, it is clear that Johnson has not been denied any assumed Sixth Amendment right. First, the Superior Court's reasons for postponing the sentencing are valid. Second, although Johnson asserts he made some efforts to have his Delaware sentence imposed during the period 1968-1969, he abandoned these efforts in 1970. Indeed, after his release from prison in Virginia, his efforts sought to frustrate the imposition of a Delaware sentence. Third, he has failed to demonstrate in the record any appreciable prejudice resulting from the delay in his sentencing. On the other hand, the length of

the delay, which we feel is longer than is normally permissible, weighs in favor of vacating the sentence. However, we do not attribute such weight to this factor so as to overcome the previous three factors.[*]

---

[*] "After balancing these four factors in *Barker,* supra, the Supreme Court upheld a conviction obtained after a five-year delay." *Id.* at 623-24.

The Supreme Court in *Barker* indicated that courts are compelled "to approach speedy trial cases on an *ad hoc* basis." We shall proceed on such a basis to apply and to balance the factors enumerated by the Court in *Barker.* We first note that although the delay was substantial, it was entirely inadvertent insofar as the State was concerned. The length of the delay was little different from that in *Barker* and less than that in *Saglimbene* and *Brady.* In all three of those cases it was found that the accused had not been denied his right to a speedy trial. Erbe took no steps to demand sentencing, no doubt hoping the court would forget the matter entirely. His trial had been concluded so we have here no dimming of the memories or disappearance of witnesses as in the conventional case where an individual claims to have been denied a speedy trial. Erbe was confined only briefly and that was after the delay was discovered. We have here the reverse of the situation in *Juarez-Casares.* It will be recalled that there the trial judge advised the defendant that he "would have imposed a different sentence if [he] had behaved [him]self." Here Erbe was placed on probation, possibly as a result of his good behavior during the delay. In short, we see no prejudice to Erbe. Accordingly, considering and balancing all of the factors, we conclude that Erbe has not been denied his constitutional right to a speedy trial.

## III

### Due Process

That there exists a due process right relating to sentencing was indicated by the Supreme Court in *Pollard.* Erbe is

incorrect, however, in his implication that a long delay in sentencing in itself is sufficient to violate due process.

In *Pollard* a judgment and order of probation was entered at a time when defendant was not present. Two years later a bench warrant was issued for his arrest for violation of probation. The earlier, invalid judgment was vacated and a new judgment on the original conviction was entered with the defendant's being sentenced to imprisonment for two years. Pollard sought to vacate the sentence, arguing, among other things, that he had been denied due process and his right to a speedy trial. The Supreme Court said, apparently in reference to both claims:

> "Whether delay in completing a prosecution such as here occurred amounts to an unconstitutional deprivation of rights depends upon the circumstances. See, *e.g.*, *Beavers v. Haubert*, 198 U.S. 77, 87; *Frankel v. Woodrough*, 7 F.2d 796, 798. The delay must not be purposeful or oppressive. It was not here. It was accidental and was promptly remedied when discovered. Nothing in the record indicates any delay in sentencing after discovery of the 1952 error. From the issuance of the warrant in September 1954 for the violation of probation, the normal inference would be that the error was still unknown to the court, although petitioner states he had known of it since November 1952. We do not have in this case circumstances akin to those in *United States v. Provoo*, 17 F.R.D. 183, 201, aff'd mem. 350 U.S. 857, where Judge Thomsen found the delay 'caused by the deliberate act of the government' which the accused attempted to correct. The same situation existed in *United States v. McWilliams*, 82 U.S. App. D.C. 259, 163 F.2d 695, where the Government's failure to be ready for trial persisted for nearly two years despite defendant's motions for trial. In these cir- circumstances, we do not view the lapse of time before correction of the error as a violation of the Sixth Amendment or of Rule 32 (a). Error in the

course of a prosecution resulting in conviction calls for the correction of the error, not the release of the accused. *Dowd v. Cook*, 340 U. S. 206, 210." *Id.* 352 U. S. at 361-62.

In evaluating the claims of Erbe relative to due process, Chief Judge Orth said for the Court of Special Appeals:

"We see no violation of due process of law in the unique circumstances here existent. The delay in sentencing was due to administrative mis-adventure; it was not purposeful or oppressive. There was patently no deliberate attempt to hamper Erbe. Rather, there was inadvertent inaction. The fault was accidental in conception, venial in effect, and remedied as promptly as possible when known. The key is that had Erbe felt at any time truly aggrieved by the failure to impose sentence, he need only have so indicated to his counsel, to the State or to the court. He at all times knew that he had been convicted (on appeal he does not challenge the propriety of his conviction), that he had been released in the custody of his lawyer, and that he was awaiting sentence. It was not until it came to the attention of the court that sentence had not been imposed, and Erbe was apprehended by a quirk of fate after failing to appear in answer to a served summons, that he became dissatisfied with his status. Not only did he maintain silence, but he failed to keep in touch with his attorney and did not inform him or the court of his many changes of address. It is manifest that, until taken into custody, he was perfectly content to enjoy the status quo.

"At the hearing on the motion to dismiss, Erbe produced no evidence of actual prejudice. He did not himself testify on the issue, although he may well have been a compellable witness. He now argues that he suffered 'actual prejudice' in three respects: (1) five years spent under the threat of punishment;

(2) the postponing of punishment, which if timely imposed, 'would probably have been completed by now'; (3) the one month he spent in jail after he was arrested on the bench warrant for his failure to appear for sentencing in March 1973. None of these points was raised below. Rule 1085. In any event, he could have been sentenced either in 1969 or 1973 to a total of 25 years. Code, Art. 27, §§ 30 (b) and 340. It seems that the delay, rather than enhancing punishment, may well have lessened it. And the issuance of the bench warrant and his subsequent incarceration were directly attributable to his failure to appear or inform the proper persons of his whereabouts.

"We hold that the court below did not err in denying the motion to dismiss on the ground of a denial of due process of law." *Id.* 25 Md. App. at 388-89.

We adopt that opinion.

## IV

### Rule 761 a

Rule 761 a provides in pertinent part that "[s]entence shall be imposed without unreasonable delay." In this regard it is identical to Fed. R. Crim. P. 32 (a) (1). Erbe argues that "unless the Rule is construed as mandatory it is of little value."

2 C. Wright, *Federal Practice and Procedure* § 521 (1969) states that Rule 32 (a) (1) "carries forward a provision that had earlier been contained in the Criminal Appeals Rules of 1933." The author goes on to state:

"A similar provision in the Criminal Appeals Rules providing that sentence 'be imposed without delay' was construed as intended to expedite appeals and not for any particular advantage to the defendant." *Id.* at 386.

Cited as authority for this statement are *Berkowitz v.*

*United States*, 90 F. 2d 881 (8th Cir. 1937), and *Pratt v. United States*, 102 F. 2d 275, 70 App. D. C. 7 (1939). In the latter case Pratt entered a guilty plea on March 7, 1937. Sentence was not then imposed. On April 1, 1938, he filed a motion in arrest of judgment based on the contention that the trial court had lost jurisdiction to impose sentence. He was finally sentenced on May 26, 1938. In response to his contention on appeal that the district court had lost jurisdiction to impose sentence, Justice Vinson (later Chief Justice of the United States), said for the court:

> "We do not think that this rule changed, or was intended to change, the substantive law relative to jurisdiction. There is no penalty attached by the rule. The rule was adopted for the purpose of expediting criminal cases after verdict. It was suggested in Berkowitz v. United States, 8 Cir., 90 F.2d 881, that the rule is not for the benefit of a defendant, but for the benefit of the government. We think that it is equally important that the defendant have the benefit of the rule, and that upon his request, unless good cause to the contrary appears, the court should accommodate him by imposing sentence 'without delay.' Doubtless the Supreme Court in the promulgation of this procedural rule had the interest of the prisoner in mind, as well as the interest of society, but we think there was no purpose, intent, or power to change the substantive law relative to jurisdiction. Farnsworth v. Zerbst, 5 Cir., 98 F.2d 541, 543." *Id.* at 278.

The judgment of the district court was affirmed.

The fact that there was no purposeful delay was mentioned in *Pollard.* In discussing the delay there and Rule 32 (a) the Court said, "The delay must not be purposeful or oppressive." 352 U. S. at 361. Cases following the view that in order to constitute a violation of the rule purposeful or oppressive delay must be found include *Juarez-Casares v. United States*, 496 F. 2d 190, 192 (5th Cir. 1974); *United*

*States v. Tortorello,* 391 F. 2d 587, 589 (2d Cir. 1968); *Welsh v. United States,* 348 F. 2d 885, 886-87 (6th Cir. 1965); *United States v. Grabina.* 309 F. 2d 783, 786 (2d Cir. 1962), *cert. denied,* 374 U. S. 836 (1963); and *Lott v. United States,* 309 F. 2d 115, 122 (5th Cir. 1962), *cert. denied,* 371 U. S. 950 (1963).

As Chief Judge Orth pointed out for the Court of Special Appeals, the rule provides no sanction for violation of its requirement that sentencing be imposed without unreasonable delay. The delay here was neither purposeful nor oppressive. Accordingly, we hold that the trial court did not err in denying the motion to dismiss on the ground of a violation of Rule 761 a.

*Judgment affirmed; appellant to pay the costs.*

*Digges, J., dissenting:*

While I do not take issue with the facts as set out by the majority, my assessment of those facts leads me to conclude that Erbe was denied the speedy trial guaranteed him by both the Sixth Amendment of the United States Constitution and Article 21 of the Maryland Declaration of Rights.[1] Consequently, I respectfully dissent.

According to the Sixth Amendment of the Federal Constitution, " [i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." Likewise, Article 21 of our Declaration of Rights provides " [t]hat in all criminal prosecutions, every man hath a right . . . to a speedy trial . . . ."

I

Preliminarily, I would hold what the majority assumes arguendo — that sentencing is part of the trial for purposes of both of these speedy trial rights. Obviously, as these constitutional provisions do not define "trial," the language

---

1. The Sixth Amendment right to a speedy trial is enforced against the several states, as a fundamental right, under the Fourteenth Amendment of the Federal Constitution. Klopfer v. North Carolina, 386 U. S. 213, 222-23, 87 S. Ct. 988, 993, 18 L.Ed.2d 1 (1967).

of neither explicitly resolves the issue.[2] Additionally, with regard to the legislative history of these two constitutional provisions, there is, as has been said with respect to the Sixth Amendment right, a "paucity of historical data [, which] makes it difficult to ascertain the intent of the framers when they enacted the . . . speedy-trial guarantee." Note, *The Right to a Speedy Trial*, 20 Stan. L. Rev. 476, 484 (1968); *see United States v. Marion*, 404 U. S. 307, 314 n. 5, 92 S. Ct. 455, 460 n. 5, 30 L.Ed.2d 468 (1971); *Dickey v. Florida*, 398 U. S. 30, 41 n. 2, 90 S. Ct. 1564, 1570 n. 2, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring). The closest the United States Supreme Court has come to addressing the question was in *Pollard v. United States*, 352 U. S. 354, 361, 77 S. Ct. 481, 486, 1 L.Ed.2d 393 (1957), in which a majority of the Court decided to "assume *arguendo* that sentence is part of the trial for purposes of the Sixth Amendment," while the dissent observed, *id.* at 368, 77 S. Ct. at 489 (Warren, C. J., dissenting), that " [i]t has never been held that the sentence is not part of the 'trial.' " *See also United States v. Marion, supra,* 404 U. S. at 313, 320-21, 92 S. Ct. at 459, 463-64; *Berman v. United States*, 302 U. S. 211, 212, 58 S. Ct. 164, 166, 82 L. Ed. 204 (1937); *Miller v. Aderhold*, 288 U. S. 206, 210-11, 53 S. Ct. 325, 326, 77 L. Ed. 702 (1933). With regard to Article 21, although this Court has never specifically decided the question, there is language in *Ash v. State*, 238 Md. 317, 320-21, 208 A. 2d 691 (1965), as the majority here points out, indicating that sentencing is not part of the trial for purposes of that speedy trial clause. I am, however, unable to agree with this dicta in *Ash*, since I believe that the policies behind the speedy trial right require that sentencing, which constitutes the final judgment from which appeal is ordinarily taken, be included within the term "trial." It will suffice here to merely mention some of these

---

**2.** On its face, the Sixth Amendment only applies to those persons who can be characterized as "accused." United States v. Marion, 404 U. S. 307, 313, 92 S. Ct. 455, 459, 30 L.Ed.2d 468 (1971); *see* Dillingham v. United States, 44 U.S.L.W. 3327 (U.S. Dec. 1, 1975) (per curiam). I believe that a criminal defendant remains so designated at least until a judgment of conviction, meaning sentence, is imposed. *See* Dickey v. Florida, 398 U. S. 30, 44-45, 90 S. Ct. 1564, 1572, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring).

policies: the right to a speedy trial is intended to prevent unnecessary incarceration; minimize the anxiety suffered by the accused, his family and friends; protect the accused from undue public scorn, loss of employment and curtailment of his freedoms of speech and association; discourage official abuse of the criminal justice system; deter the accused and others from violating the law; and alleviate the overcrowding of penal institutions. *See Dillingham v. United States,* 44 U.S.L.W. 3327 (U.S. Dec. 1, 1975) (per curiam); *Strunk v. United States,* 412 U. S. 434, 439-40, 93 S. Ct. 2260, 2263, 37 L.Ed.2d 56 (1973); *Barker v. Wingo,* 407 U. S. 514, 519-21, 92 S. Ct. 2182, 2186-87, 33 L.Ed.2d 101 (1972); *United States v. Marion, supra,* 404 U. S. at 320, 92 S. Ct. at 463; *Dickey v. Florida, supra,* 398 U. S. at 41-43, 90 S. Ct. at 1570-71 (Brennan, J., concurring); *Smith v. Hooey,* 393 U. S. 374, 377-80, 89 S. Ct. 575, 577-78, 21 L.Ed.2d 607 (1969); *Klopfer v. North Carolina,* 386 U. S. 213, 222, 87 S. Ct. 988, 993, 18 L.Ed.2d 1 (1967); *United States v. Ewell,* 383 U. S. 116, 120, 86 S. Ct. 773, 776, 15 L.Ed.2d 627 (1966). It is self-evident that in order to effectuate fully these policies the guarantee of a speedy trial must be read to apply to the period between the verdict and the imposition of sentence. In fact, decisions holding or assuming the right is applicable to this interval are legion. *See, e.g., Juarez-Casares v. United States,* 496 F. 2d 190, 192 (5th Cir. 1974); *Brady v. Superintendent,* 443 F. 2d 1307, 1310 (4th Cir. 1971); *Brooks v. United States,* 423 F. 2d 1149, 1151 (8th Cir.), *cert. denied,* 400 U. S. 872 (1970); *Johnson v. State,* 305 A. 2d 622, 623 (Del.), *cert. denied,* 413 U. S. 901 (1973).[3] I would hold that

**3.** It might also be argued that the speedy trial right of the Sixth Amendment should encompass sentencing since the right to counsel, also guaranteed by that amendment, was held to do so in Townsend v. Burke, 334 U. S. 736, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948), *as interpreted in* Mempa v. Rhay, 389 U. S. 128, 134, 88 S. Ct. 254, 257, 19 L.Ed.2d 336 (1967). However, in United States v. Marion, *supra,* 404 U. S. at 320-21, 92 S. Ct. at 463-64, a parallel argument, that the speedy trial right should apply to certain pre-arrest, pre-indictment, situations since the right to counsel was held to do so in Miranda v. Arizona, 384 U. S. 436, 444, 86 S. Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), failed to persuade a majority of the Supreme Court to extend the speedy trial right to pre-arrest, pre-indictment, delays. *See* United States v. Marion, *supra,* 404 U. S. at 332-33, 92 S. Ct. at 469-70 (Douglas, J., concurring in result). *See also* Dillingham v. United States, *supra,* 44 U.S.L.W. 3327 (interpreting *Marion*).

the Sixth Amendment speedy trial right and the analogous Article 21 right both apply until, at least, a final judgment is entered upon the pronouncement of sentence.

## II

Next, I will consider how to interpret the Article 21 guarantee. The majority states that it will regard its "discussion of the Sixth Amendment right to a speedy trial as equally applicable to the right provided in Declaration of Rights, Art. 21." That position is not at odds with what we today hold in *Smith v. State*, 276 Md. 521, 527, 350 A. 2d 628 (1976), "that the opinions of the Supreme Court interpreting the Sixth Amendment right to a speedy trial are 'very persuasive, although not necessarily controlling,' as to the proper construction of Maryland's parallel Article 21 right." However, as the majority here correctly points out, this Court has held that a defendant waives his Article 21 right to a speedy trial by not demanding it. *See, e.g., Keyes v. State*, 236 Md. 74, 80, 202 A. 2d 582 (1964); *Harris v. State*, 194 Md. 288, 297-98, 71 A. 2d 36 (1950). While recognizing that those Maryland cases were all decided prior to the Supreme Court's rejection in *Barker v. Wingo, supra*, 407 U. S. at 523-28, 92 S. Ct. at 2188-91, of the demand-waiver doctrine with respect to the Sixth Amendment, the majority concludes that they "need not decide today whether the concepts expressed in [the earlier Maryland cases] remain viable in the light of *Barker." See Smith v. State, supra*, 276 Md. at 527 n. 2, 350 A. 2d at 632 n. 2 (also not deciding the issue). Since the petitioner in this case was arrested on September 30, 1968, and convicted by a jury on June 25, 1969, but did not complain until January 16, 1974, about his not being sentenced, it would seem that under the pre-*Barker* Maryland decisions he waived his Article 21 right; thus the continuing vitality of these cases is an issue. I would overrule those decisions — following what the Supreme Court has said not only of the Sixth Amendment speedy trial right, *Barker v. Wingo, supra*, 407 U. S. at 525-28, 92 S. Ct. at 2189-91, but also of other federal constitutional rights, *see, e.g., Boykin v. Alabama*, 395 U. S.

238, 242-43, 89 S. Ct. 1709, 1712, 23 L.Ed.2d 274 (1969) (self-incrimination, trial by jury, confrontation); *Miranda v. Arizona*, 384 U. S. 436, 475-76, 86 S. Ct. 1602, 1628-29, 16 L.Ed.2d 694 (1966) (self-incrimination and counsel); *Carnley v. Cochran*, 369 U. S. 506, 513-16, 82 S. Ct. 884, 888-90, 8 L.Ed.2d 70 (1962) (counsel) — and hold that the Article 21 right to a speedy trial must be presumed not to be waived. Only a record indicating that the defendant knew of the right and intentionally relinquished or abandoned it should support a waiver, and no such record exists here.

### III

I will now consider whether, under the facts of this case, Erbe's right to a speedy trial was violated. To determine if there has been such an infringement of the Sixth Amendment right to a speedy trial, the Supreme Court adopted, in *Barker v. Wingo, supra*, 407 U. S. at 530, 92 S. Ct. at 2191-92, "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." That Court identified four factors which were to be assessed in the process: (1) length of the delay; (2) reasons for the delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. *Id.*, 92 S. Ct. at 2192.

### (1) Length of the Delay

The Supreme Court, in *Barker*, stated that

> "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*

Although the petitioner became an "accused," so as to activate the speedy trial guarantee, when he was arrested on September 30, 1968, *Dillingham v. United States, supra*, 44 U.S.L.W. 3327; *United States v. Marion, supra*, 404 U. S. at 320-21, 92 S. Ct. at 463-64; *Smith v. State, supra*, 276 Md. at 528 & n. 4, 350 A. 2d at 633 & n. 4; *Epps v. State*, 276 Md. 96, 109-11, 345 A. 2d 62, 71-72 (1975), he was not sentenced until

July 1, 1974. Consequently the delay with which we are concerned amounted to five years, nine months.[4] A delay of "well over five years," approximately five years and three months, led the Supreme Court to engage in the balancing process in *Barker.* 407 U. S. at 516-18, 533, 92 S. Ct. at 2185-86, 2193-94. This Court's decision in *Epps v. State, supra,* 276 Md. at 111, 345 A. 2d at 72, is dispositive of the issue, however, as there we held that a one-year, fourteen-day postponement was sufficient to require us to examine the other factors. *See Smith v. State, supra,* 276 Md. at 528, 350 A. 2d at 633 (16-month delay sufficient). As implicitly recognized by the majority, the delay in Erbe's sentencing necessitates our entering into the balancing test.

The majority, however, goes on to conclude that "[w]hile the delay in this case may be 'inordinate,' it should not, as an isolated factor, influence the balancing process *to any significant degree.*" (Emphasis added.) It is true, as the majority points out, that the *Barker* Court, after terming the approximately five-year interval between Barker's arrest and trial "extraordinary," found the length of the delay to be outweighed by other factors and concluded that there was no violation of the speedy trial right. *See* 407 U. S. at 533-36, 92 S. Ct. at 2193-95. Nevertheless, it seems to me, and the majority apparently does not disagree, that the Supreme Court did give *some* weight to the length of time Barker's trial was postponed. *But see* Rudstein, *The Right To A Speedy Trial: Barker v. Wingo In The Lower Courts,* 1975 U.Ill.L. Forum 11, 22-23; Uviller, *Barker v. Wingo: Speedy Trial Gets A Fast Shuffle,* 72 Colum.L.Rev. 1376, 1383-85 (1972). I say this because of several things said by the *Barker* Court: first, the Court declared that the length of the delay is one of the factors "courts should assess in determining whether a particular defendant has been deprived of his [speedy trial] right," 407 U. S. at 530, 92 S. Ct. at 2192; second, the Court only asserted that "length of delay is *to some extent* a triggering mechanism" (emphasis

4. It is not clear to me whether the majority similarly measures the delay or if they consider only the approximately five-year period between the date of trial (June 25, 1969) and sentencing (July 1, 1974).

added) rather than it is to be treated *only* as a triggering mechanism, *id.*; third, in balancing the four factors the Court did characterize the five-year delay as "extraordinary" and called the case "close," *id,* at 533, 92 S. Ct. at 2193-94; and fourth, after discussing the length of the delay and the reasons for it the Court concluded that "[t]wo counterbalancing factors [(insignificant prejudice shown and nonassertion of the right)] outweigh *these deficiencies,"* (emphasis added) referring back to *the length of and reasons for the delay, id.* at 534, 92 S. Ct. at 2194. It is of no moment that the *Barker* Court did not find the length of the delay determinative since the Court specifically stated that "[w]e regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533, 92 S. Ct. at 2193. Exactly how much weight the Court afforded the five-year delay in *Barker* is not altogether clear, but since it called the case "close" and characterized the length of the delay as "extraordinary," *id.,* 92 S. Ct. at 2193-94, I believe they did give it, by itself, significant (although not decisive) weight. It only makes sense, considering the strong societal interests in the prompt administration of justice and the increasing possibility of prejudice to the accused, that as the sands of time flow they should add ever-increasing weight to the side of the scale marked "violation." Consequently, I would hold contrary to the majority, that the length of delay at issue here, five years, nine months, which is about six months longer than the period involved in *Barker,* should be given significant weight in the balancing process.

### (2) Reasons for the Delay

Mr. Justice Powell, writing for the Supreme Court in *Barker,* concluded that

> "[D]ifferent weights should be assigned to different reasons [for delay]. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but

nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* at 531, 92 S. Ct. at 2192 (footnote omitted).

The reasons for the delay between petitioner's arrest (September 30, 1968) and trial (June 25, 1969), a period of about nine months, are not indicated in the record. However, since this period is relatively short and Erbe has not argued that it should be weighed against the State, I will consider it to be, by itself, neutral. As for the approximately five-year interval between petitioner's trial (June 25, 1969) and sentencing (July 1, 1974), the majority is correct in saying that, while "there is not the slightest implication that [the Government] failed to act in good faith," the delay "stemmed from inadvertence on the part of the State." The Government, through the court and the State's Attorney's office, was simply negligent in not making sure Erbe was sentenced at an earlier date.[5] As the Supreme Court said in *Barker*, " [a] defendant has no duty to bring himself to trial; the State has that duty . . . ." 407 U. S. at 527, 92 S. Ct. at 2190 (footnote omitted). The fact that negligence traceable to the State was responsible for the delay in petitioner's sentencing must be, and the majority recognizes, weighed against the Government.

### (3) Defendant's Assertion of His Right

Although the petitioner was arrested on September 30, 1968, but not sentenced until July 1, 1974, it was not until January 16, 1974, that he first moved to dismiss his

---

5. Clearly, I agree that a defendant need not be sentenced immediately upon conviction; the State is permitted an appropriate period within which to develop a pre-sentence report and the trial court must be allowed a reasonable time to deliberate upon the vexing question of what is a proper sentence under the circumstances.

indictment on the ground that he had been denied a speedy trial. The *Barker* Court stated that

> "Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U. S. at 531-32, 92 S. Ct. at 2192-93.

When balancing the four factors the Supreme Court indicated, as Judge Smith notes for the majority here, that it was of great importance "that Barker did not want a speedy trial." *Id.* at 534, 92 S. Ct. at 2194. In fact, Mr. Justice Powell asserted in *Barker* that

> " [B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." *Id.* at 536, 92 S. Ct. at 2195.

However, unlike the situation in *Barker*, there is no affirmative evidence that the accused in this case did not want a speedy trial. In *Barker* the Supreme Court relied on the admission of the defendant's counsel that his client did not want to be tried; here no similar concession was made. *See id.* at 535, 92 S. Ct. at 2194. But underlying *Barker* is also an assumption that if a defendant is suffering prejudice from delay he would complain by asserting his right, and conversely, that if he doesn't object to the delay he is not

being prejudiced, at least when he is in a position to benefit from the postponement. While this assumption may possibly be justified before a defendant is found guilty,[6] which was the situation in *Barker*, I think it unwarranted in a post-guilty-verdict setting. Once an accused is adjudged guilty he usually has so little to gain (starting his sentence so as to finish it sooner) and so much to lose (his money, his freedom or even his life) that no matter how much prejudice he endures while awaiting sentence he is unlikely to complain. Suppose a defendant is found guilty of a crime for which a possible punishment is death, even if he is being substantially prejudiced by the delay in sentencing it is farfetched to assume that he will climb the scaffolding, put the noose around his own neck and ask that the trap door be opened by asserting his constitutional right. "[T]o require a man to beg for a trial on such a charge, with its enormous penalty, requires too much of human nature." *United States v. Chase*, 135 F. Supp. 230, 233 (N.D. Ill., 1955) (referring to delay in a murder case). Furthermore, to place significant weight on the accused's assertion of his speedy trial right, a right which the Supreme Court has characterized as "fundamental," *Klopfer v. North Carolina, supra*, 386 U. S. at 223, 87 S. Ct. at 993, ignores the societal interests, which are independent of and sometimes in opposition to the accused's interests, *Barker v. Wingo, supra*, 407 U. S. at 519, 92 S. Ct. at 2186, in bringing about a prompt trial. Consequently, when there has been a delay in sentencing such as here, I would only give minimal weight adverse to the accused, and not significant weight (as do the majority), to the fact that he did not demand a speedy trial.

---

**6.** This is one of the most criticized aspects of *Barker*. *See* Amsterdam, *Speedy Criminal Trial: Rights and Remedies*, 27 Stan.L.Rev. 525, 539-41 (1975); Rudstein, *The Right To A Speedy Trial: Barker v. Wingo In The Lower Courts*, 1975 U.Ill.Forum 11, 39-40, 55-56, 58; Uviller, *Barker v. Wingo: Speedy Trial Gets A Fast Shuffle*, 72 Colum.L.Rev. 1376, 1387-88, 1391, 1399 (1972); Comment, *The Speedy Trial Guarantee: Criteria And Confusion In Interpreting Its Violation*, 22 DePaul L.Rev. 839, 850-52 (1973); *The Supreme Court, 1971 Term*, 86 Harv.L.Rev. 49, 168-70 (1972); 58 Cornell L.Rev. 399, 406-08, 411-12 (1973).

### (4) Prejudice to the Defendant

The Supreme Court, in *Barker*, "expressly rejected the notice that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial . . . ." *Moore v. Arizona*, 414 U. S. 25, 26, 94 S. Ct. 188, 189, 38 L.Ed.2d 183 (1973). Rather, if an accused can show prejudice he has a stronger case for dismissal, and the more prejudice he proves the more formidable his case. Unlike the majority, I conclude that petitioner has established that he was prejudiced.

The *Barker* Court stated that prejudice should be appraised in the light of the policies underlying the speedy trial right. 407 U. S. at 532, 92 S. Ct. at 2193. One of the aims of this right was "to prevent oppressive pretrial incarceration," *id.*, including, since sentencing is part of the trial for purposes of the right, oppressive pre-sentence incarceration. Although Erbe was undoubtedly prejudiced to some extent by being imprisoned for one month while awaiting sentence, the prejudice was apparently minimal. However, the speedy trial right was also intended to protect the accused from public scorn, financial ruin and having to curtail the exercise of his freedoms of speech and association, as well as to prevent the accused, his family and friends from suffering unnecessary anxiety. *See Barker v. Wingo, id.* at 532-33, 92 S. Ct. at 2193; *United States v. Marion, supra,* 404 U. S. at 320, 92 S. Ct. at 463; *Klopfer v. North Carolina, supra,* 386 U. S. at 222, 87 S. Ct. at 993; *Epps v. State, supra,* 276 Md. at 118, 345 A. 2d at 76-77. While the majority concludes that Erbe cannot complain of public obloquy since he was found guilty by a jury, I think he has a legitimate grievance at least until a final appealable judgment is entered by the imposition of sentence. The financial problems that Erbe encountered are not mentioned by the majority. No doubt petitioner found it difficult to retain or obtain employment after he was found guilty and was awaiting sentence; this is especially so inasmuch as the sentence could have involved Erbe's imprisonment. Since, as the Supreme Court said in *Klopfer v. North Carolina, supra,* 386 U. S. at 222, 87 S. Ct. at 993, the mere "pendency of the

indictment . . . almost certainly will force curtailment of [an accused's] speech, associations and participation in unpopular causes," clearly a verdict of guilty will lead an accused awaiting sentence to do likewise. Additionally, the majority apparently concludes that the only anxiety with which the speedy trial clause is concerned relates to whether or not one will be found guilty, and that consequently Erbe sustained no such distress because his guilt was promptly determined by the jury. That, however, is only one of the sources of worry the constitutional guarantee attempts to minimize; another is what sentence will be imposed once an accused is found guilty. There can be not the slightest doubt that petitioner suffered the pangs of mental anguish while being kept in suspense for five years as to what his sentence would be. I would conclude, therefore, that Erbe did show that he suffered prejudice while awaiting sentence, and I would weigh this in favor of finding a violation of his constitutional right to a speedy trial. Furthermore, in the words of Judge O'Donnell, speaking for this Court in *Epps v. State, supra,* 276 Md. at 119, 345 A. 2d at 77, the Supreme Court has indicated that "prejudice may be presumed from the inordinate length of the delay itself, *Barker v. Wingo, supra,* 407 U. S. at 530, 92 S. Ct. [at 2192]; *Strunk v. United States, supra,* 412 U. S. at 439, 93 S. Ct. [at 2263] . . . ." Asserting that the Supreme Court "has not said that such prejudice would be assumed from any delay which would mandate a determination that there was a denial of the right to a speedy trial," [7] the majority here attempts to avoid the presumption by limiting it to delay occurring prior to the verdict on the ground that the pre-verdict and post-verdict "concerns of defendants . . . are so entirely different." The Supreme Court has not made this distinction, nor do I think they will fragment the Sixth Amendment to do so. *See Dickey v. Florida, supra,* 398 U. S. at 44-45, 90 S. Ct. at 1572

---

**7.** Although I do not think they are, if the majority is implying that there could be a delay of such duration as to trigger the need to enter into the balancing process yet not long enough for prejudice to be assumed, they are flying in the face of the *Barker* Court's rule that only a deferral of "presumptively prejudicial" length requires the weighing process to be undertaken. *See* 407 U. S. at 530, 92 S. Ct. at 2192.

(Brennan, J., concurring). The reasons for presuming prejudice from inordinate delay relate to the difficulty of proving certain kinds of prejudice and to the policies behind the speedy trial right, and I do not think they evaporate when the verdict is rendered. How much prejudice can be assumed from the extreme length of the delay between the verdict and Erbe's sentencing was determined and factored into the *Barker* calculus when I indicated earlier that significant weight must be given to the length of the delay itself.

Besides the detriment suffered by Erbe himself, society is prejudiced when an accused is not furnished a prompt trial. It is of substantial significance that when a defendant and others are not impressed with the swiftness of justice the possibilities for rehabilitation and deterrance are diminished. *See Barker v. Wingo, supra,* 407 U. S. at 520 & n. 10, 92 S. Ct. at 2187 & n. 10; *Dickey v. Florida, supra,* 398 U. S. at 42, 90 S. Ct. at 1571 (Brennan, J., concurring). Delay may further hamper the criminal justice system by permitting defendants to obtain better plea bargains, increasing the opportunity of those free while awaiting trial to flee or commit other crimes, making it harder for the State to prove its case, adding to the costs and overcrowding of penal facilities, possibly swelling the public assistance rolls, and opening the door to official abuse of the judicial system. *See Barker v. Wingo, supra,* 407 U. S. at 519-21, 92 S. Ct. at 2186-87; *Dickey v. Florida, supra,* 398 U. S. at 42-43, 90 S. Ct. at 1571 (Brennan, J., concurring); *Smith v. State, supra,* 276 Md. at 533-34, 350 A. 2d at 636. Furthermore, Maryland has indicated its concern over undue delay in criminal trials via statute and rule. *See* Maryland Code (1957, 1971 Repl. Vol., 1975 Cum. Supp.), Art. 27, § 591; Maryland Rules 709, 740, 761 a. These considerations should also be taken into account, and weighed against the State, when an accused is not afforded a prompt trial.

Having examined each of the four factors mentioned by the *Barker* Court, I proceed to the "difficult and sensitive balancing process." 407 U. S. at 533, 92 S. Ct. at 2193. Upon examination of the entire record I would, as already

explained, give significant weight to the extreme length of the delay, some weight to the reasons for it, minimal weight to the petitioner's tardy assertion of his right and some weight to the prejudice petitioner was shown to have endured and to that suffered by society. Weighing them as a composite whole, I am persuaded that Erbe was denied the speedy trial guaranteed him by both the Sixth Amendment and Article 21, and consequently I would, as required by *Strunk v. United States, supra,* 412 U. S. at 439-40, 93 S. Ct. at 2263, reverse and remand the case for dismissal of the indictment.

Since I would find a violation of the speedy trial right there is no need for me to extend this already lengthy dissent by discussing the additional possibility of a due process infringement.

Judge Eldridge has authorized me to state that he joins in this dissent and concurs in the views here expressed.